The Chicago, St. Charles and Mississippi Railroad Company, Appellant, *v.* Edwin C. Larned, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

An attorney cannot recover for services rendered as such, unless he can show an employment or retainer.

This was a declaration in assumpsit, in the usual form, charging defendant for services rendered in the Supreme Court, as an attorney, etc.

Plea of general issue in the usual form.

Jury trial; verdict of jury in favor of plaintiff for $1,000.

Defendant's motion for new trial overruled. Judgment for Larned in the court below.

Appeal granted.

*James H. Rees,* called by plaintiff, testified:

Resides in Cook county. Was one of the parties plaintiff in a suit in the Court of Common Pleas, in Cook county, against Bennett and others. Suit commenced in 1855 or 1856. The Chicago, St. Charles and Mississippi Air Line Railroad Company and he, said witness, Henry Waller and McCauley, were plaintiffs. Bill filed to establish lost deed from one Bennett to Kinzie. The land involved was the west half of the north-east quarter of Section No. 20, in Town 39, Range 15, situated in Cook county, about one and a half or two miles south-west of the court house. The parties named were the owners of the land. The railroad company had a railroad track across the land; claimed about eight acres of it.

Had a conversation with Minard about these bills, two or three years back; Litchfield referred me to Minard, in regard to the settlement of these expenses; bills were paid by Galena Road, by Minard; Minard was the managing man of the road in Illinois. A decree taken for complainants in Cook County Court of Common Pleas. The other party appealed; after the

appeal, I retained Larned to defend me in the Supreme Court, on the writ of error; Waller and McCauley compromised for all, excepting my land and defendants'; I wrote to Mr. Minard. Letter produced, of which the following is a copy:

*Chicago, April* 14, 1859.

Hon. Ira Minard, St. Charles, Ill.,

*Dear Sir:*—The suit of Waller and others, against Bennett and others, has been compromised by him, so far as his interest and that of his friends are concerned; I have decided to continue the suit for my interest, and it is for you to decide whether you will settle or fight. They compromised by paying $400 per acre. Supreme Court sits, I believe, on Monday next, and it is important that you decide at once. I have retained Mr. Larned to attend to my interest before the Supreme Court. You can compromise at the same price per acre as Waller and others. I pay Larned $1,000 for attending to my interest. Had you not better come and see to it?

JAMES H. REES.

Witness said, " I don't know as Larned told me to write; I did not hear from Minard a few days after Barry called on me; inquired about it; understood he was acting in the same position Minard had formerly; don't know what that position was; plaintiff had gone to Supreme Court; Barry said he would see plaintiff; don't think he stated whether defendant had concluded to compromise or not.

Orders were paid by the Galena Railroad Company, by order of Minard; Minard said he had seen Litchfield, and perhaps it was right they should pay a share of the expenses. Plaintiff then asked witness, How much did they pay? Witness answered, I think they paid $600 or $700.

Can't say that Minard or Litchfield knew anything about Larned having anything to do with the case; can't say that any of the acting men (of the railroad company) knew anything of Larned having any connection with the suit.

Waller and myself had charge of it; first knowledge defendants had of it was when I called on Minard for money, two or three years after the bill was filed.

The $600 or $700 was for court fees, traveling expenses, etc., Waller's expenses to Missouri; first conversation with Litchfield, two or three years after bill was filed; Litchfield knew the purpose of the bill; he did not know who were the attorneys; Minard knew the same; can't say they knew what court the case was in.

Minard said he knew nothing about it; I told him Litchfield said it was all right; Bennett and Stowe appealed.

The errors assigned are, That the court erred in receiving improper evidence on the part and behalf of the plaintiff, and allowing the same to go to the jury; the court erred in giving improper instructions on the part and behalf of the plaintiff; the verdict of the jury was contrary to the evidence; the verdict of the jury was against the law and evidence of the case; the court erred in overruling the motion for a new trial; and the court erred in rendering judgment on the verdict of the jury.

W. D. BARRY, for Appellant.

GOODWIN, LARNED & GOODWIN, for Appellee.

CATON, C. J. After the most careful examination of the testimony in this cause, we are forced to the conclusion that the plaintiff did not make out an employment or retainer by the defendant to conduct the cause on its behalf in the Supreme Court. There is not the least particle of evidence that any communication ever passed between the parties on the subject, nor is there any that the defendant had any intimation or supposition that the plaintiff proposed or professed to represent it, in that cause in the Supreme Court. Mr. Rees employed the plaintiff to attend to that cause on his behalf, and he recommended to Mr. Minard that the defendant should employ the plaintiff to attend to its interest. But this recommendation was never acted upon. It may be that the officers of the defendant refused to employ the plaintiff, knowing that its interests were identical with those of Mr. Rees, and that the success of Mr. Rees was necessarily their success. The plaintiff could not say a word or do an act for Mr. Rees, which did not at the same time operate to the same extent for the defendant. To sit quietly by and allow Mr. Rees' counsel to conduct the cause thus situated, and refuse to employ counsel to aid in the matter, may have been ungenerous, but it certainly did not create a legal liability on the part of the defendant. There is nothing in the evidence to induce the belief that the plaintiff supposed that he was retained by the defendant, or that he ever did one act, or said one word, that he would not have done or said had the defendant settled with the opposite party, as all the others did, except Rees; or that he said or did anything in reference in any way to the defendant. Whatever there may be in this claim in a moral point of view, it would be a most dangerous precedent to hold, that because the defendant had sat silently by and let counsel employed by another argue a cause, which if won would secure his interest, therefore he

agreed to pay the counsel in proportion to the benefit thus received. Certainly the defendant never supposed that it had retained the plaintiff, nor is there any evidence to show that the plaintiff supposed that he was retained by the defendant. Suppose the defendant had settled with Bennett the day before or the day after that cause was argued in this court, and before we had decided it, would the defendant have been liable to pay for these services? It would have been just as much liable and no more, than as if such settlement had been made the day after Rees wrote the letter to Minard. In either case, if it had employed the plaintiff, it was liable, otherwise not. We cannot make out such a case, and the judgment must therefore be reversed.

*Judgment reversed.*