BECHT v. MILLER.

1. ATTORNEY AND CLIENT—CONTRACT FOR COMPENSATION.
   The essential feature of the professional relation between attorney and client being the fact of employment to do something in the client's behalf, there must be an express or implied agreement for compensation.

2. SAME—COMPENSATION.
   Generally speaking, an attorney must look to the one who employed him for his compensation even though others were incidentally benefited by his services and accepted such benefits.

3. SAME—EMPLOYMENT BY LEGATEES.
   Legatees cannot obligate an estate by contract, either express or implied, to compensate an attorney, employed by them, for his services.

4. EXECUTORS AND ADMINISTRATORS—ATTORNEY FEES.

Fees of an attorney employed by the executor or administrator of an estate are not paid from the assets of the estate by virtue of the contract of employment between the attorney and such executor or administrator but are allowed as expenses of administration when such services are necessary to the settlement of the estate.

5. SAME—RESTORATION OF FUNDS—REMOVAL OF EXECUTRIX—ATTORNEY FEES.

Reasonable value of services of attorney, employed by a residuary legatee, which were, in part, beneficial to the estate and consisted in securing restoration to the estate of funds wrongfully withheld by the executrix and her removal upon failure to file adequate bond *held,* proper charge against estate.

6. ATTORNEY AND CLIENT—ELEMENTS TO BE CONSIDERED IN FIXING COMPENSATION FOR SERVICES.

In fixing the compensation an attorney should receive for his services, the court should consider the time spent, the amount involved, the character of the service rendered, the skill and experience called for in the performance of the work, and the results achieved.

7. SAME—ESTATES OF DECEDENTS—FEES.

Although Supreme Court is reluctant to disturb findings of trial court, its allowance of $7,500 to attorney, employed by residuary legatee, as fees for recovery of bonds for an estate, time spent in looking up evidence and securing removal of executrix is reduced to $2,000, as being ample for all services rendered by him for benefit of the estate, bearing in mind ability of counsel, nature of the litigation, results obtained and other pertinent factors.

8. APPEAL AND ERROR—EVIDENCE—ATTORNEY FEES.

Supreme Court, in reviewing amount of allowance of attorney fees in probate of will is not bound by expert opinion of attorneys who testified as to reasonable value of services rendered by petitioner where such opinion is based on claimed fact that attorney spent a great deal more time than this court feels was reasonably necessary to accomplish result.

9. EXECUTORS AND ADMINISTRATORS — FINAL ACCOUNT — ATTORNEY FEES—EXPENSE ITEMS.

Taxable attorney fees and motion fees in various proceedings in which attorney was engaged *held,* improperly allowed by trial

court as expense items for attorney, employed by residuary legatee, on allowance of final account of administrator *de bonis non.*

10. SAME—ADMINISTRATOR DE BONIS NON FEES—DISCRETION OF COURT—ATTORNEY AND CLIENT.

Fee of $1,042.23 allowed administrator *de bonis non* by trial court is reduced to $542.23, although such is a discretionary matter, where at time he assumed his duties little remained to do except to receipt for the assets in hands of executrix and divide residue, he employed an attorney who has been paid $700 and comparison of time sheets of such administrator and his attorney raises strong suspicion of duplication of services rendered.

11. SAME—ATTORNEY FOR ADMINISTRATOR DE BONIS NON—COMPENSATION.

The administrator *de bonis non* should not receive compensation for services performed by his attorney even though he assisted the latter.

12. SAME—AUDITORS' FEES.

Fee of auditors, employed by a legatee, is disallowed on appeal from allowance of final account of administrator *de bonis non*, where record fails to indicate their services were beneficial to the estate or that the results of the audit were of any assistance in accomplishing recovery of concealed assets.

13. COSTS—APPEAL FROM FINAL ACCOUNT OF ADMINISTRATOR DE BONIS NON.

No costs are allowed on appeal from allowance of final account of administrator *de bonis non* where parties prevail but in part in their respective contentions as to various items.

FEAD, C. J., and WIEST, J., dissenting in part.

Appeal from Berrien; Dehnke (Herman), J., presiding. Submitted January 6, 1937. (Docket No. 27, Calendar No. 39,245.) Decided May 21, 1937. Rehearing denied June 29, 1937.

In the matter of the estate of Martha J. Brant, deceased. Francis J. Miller, administrator *de bonis non* with will annexed, filed his final account. Car-

rie Brant Becht filed objections thereto. From order of probate court, Carrie Brant Becht appealed to circuit court. Affirmed. Carrie Brant Becht appeals. Modified and affirmed.

*Gore, Harvey & Fisher* (*Stuart B. White,* of counsel), for appellant.

*Ross H. Lamb,* for appellee.

*Francis J. Miller, in pro per.*

CHANDLER, J. Martha J. Brant died on November 7, 1928. By her last will and testament she made various devises and gifts to her three children, Mason Brant, Carrie Brant Becht and Ida May Collins and to her grandchildren, Lincoln Becht, son of Carrie Brant Becht, and Hallie Collins Patrick, daughter of Ida May Collins. The will named Carrie Brant Becht as executrix. Immediately there began a bitter contest between the legatees and devisees named in the will which has resulted in continuous litigation of the estate until the present time. It is unnecessary for the purpose of this opinion to review all of the proceedings which have ensued.

On September 14, 1932, the executrix filed her supplemental final account, which was contested by Ida May Collins and Hallie Collins Patrick through their attorney, I. W. Riford. One of the objections alleged was that the executrix had failed to account for various bonds belonging to the estate of the approximate value of $40,000. An order approving the supplemental final account as filed was entered by the probate court on October 14, 1932. Mr. Riford desired to withdraw as attorney and Ida May Collins and her daughter, Hallie Collins Patrick, engaged the services of Ross H. Lamb, who perfected

an appeal from the order of October 14, 1932. This was the first appearance of Mr. Lamb in the litigation. The agreement under which Mr. Lamb was employed was on a contingent basis, and provided that he should receive 25 per cent. of any sums he might recover for the estate, or in the event this amount was not paid by the estate, he was to receive a one-half interest in the share of Ida May Collins and her daughter, who, with appellant, Carrie Brant Becht, were residuary legatees.

The appeal was heard on April 5, 1933, at which time the principal controversy related to the ownership of Newfoundland War Bonds of 1939 having an aggregate principal value of $18,000. The issue relative to ownership of the Newfoundland War Bonds had been previously litigated when Ida May Collins and Mason Brant objected to the final account of the executrix filed March 1, 1930. It was then claimed by the objectors that the bonds belonged to the estate of Martha J. Brant, whereas the executrix claimed ownership individually. At that time the objections were overruled and the account approved. It was also claimed at the hearing on April 5, 1933, that the executrix had failed to account for city bonds of the city of Benton Harbor of the value of $3,000. The circuit court ruled adversely to the claims of the executrix and by order under date of June 19, 1933, required her to account for the Newfoundland War Bonds with interest from November 7, 1928, but sustained her contentions as to the ownership of the city bonds.

Thereafter attorney Lamb presented documentary evidence to counsel for the executrix tending strongly to establish that the city bonds belonged to the estate. As a result thereof the executrix was advised to place the bonds to the credit of the estate.

A settlement agreement was executed on August 13, 1935, whereby it was stipulated that Carrie Brant Becht was indebted to the estate in the sum of $30,-000 and that this amount was by her or her bondsmen to be paid over to the administrator *de bonis non.* Therefore it appears that $30,000, including interest, had been recovered for the estate through the efforts of Ross H. Lamb.

At the conclusion of the hearing on the appeal from the order of October 14, 1932, it appears from remarks of the court and counsel that little further remained to be done except for the executrix to account for the bonds and divide the residue. Nevertheless, on May 29, 1933, Ida May Collins filed a petition in probate court praying for the removal of her sister, Carrie Brant Becht, as executrix. By order of July 29, 1933, the executrix was removed and Francis J. Miller was appointed administrator *de bonis non* with the will annexed. On appeal the circuit court reversed the probate court on the ground that although there might be cause for the removal of the executrix, it was not advisable as nothing remained to be done in the estate except to distribute the residue. On March 5, 1934, the probate court ordered the executrix to file an additional bond on or before March 22, 1934, or be removed. The executrix contended that the existing bond was sufficient and failed to comply with the order. She was then removed for the second time by order of the probate court and for the second time Francis J. Miller was appointed administrator *de bonis non* with the will annexed. Upon appeal, the circuit court reversed this order, the circuit court being in turn reversed by a decision of this court entered October 23, 1934. *Becht* v. *Hatfield,* 269 Mich. 201.

In 1930 Ida May Collins employed the auditing firm of Evans, Marshall & Pease of Chicago, Illinois, to audit the estate of the deceased. The audit also included the estate of Edward Brant, deceased, the husband of Martha J. Brant, for the alleged purpose of determining what assets, if any, passed from the estate of Edward Brant to his wife.

On December 21, 1935, the administrator *de bonis non* filed his final account. Objections to numerous items therein were promptly made by Carrie Brant Becht, the appellant. Several of the objections were settled by agreement. The items remaining controverted were the fees of the administrator *de bonis non* in the amount of $1,042.23, the same being computed as statutory commissions. Also contested were the attorney fees and expenses of Ross H. Lamb in the amount of $8,049.37. Although not included in the final account of the administrator *de bonis non* the fee of the auditing firm in the amount of $865 was allowed as a proper charge by the probate court. The probate court approved the final account. Carrie Brant Becht appealed.

At the hearing before the circuit court on appeal, the administrator *de bonis non* waived any claim for compensation based on statutory commissions and it was agreed that his compensation should be computed on the basis of the reasonable value of the services rendered. By order of July 29, 1936, the circuit court affirmed the order of the probate court, and found the reasonable value of the services of the administrator *de bonis non* to be $1,042.23, including services rendered to the date of the order.

In opposing the allowance of the fees and expenses of Ross H. Lamb, appellant urges that from the time Lamb first appeared in the litigation on ap-

peal from the order of the probate court of October 14, 1932, the only question presented was the determination of and distribution of the residue between the residuary legatees, Carrie Brant Becht and Ida May Collins; that therefore the fees and expenses of Lamb were incurred in settling a dispute between individual legatees, a dispute in which the estate was not interested; and that each party should be held to bear their own expenses thereof. It is further contended by the appellant that a contract of employment, either express or implied, is necessary to obligate an estate for such fees and expenses.

We do not question the general proposition asserted by the appellant that an attorney's right to compensation depends upon the existence of a contract, express or implied. *In re Faling's Estate,* 113 Ore. 6 (228 Pac. 821); *Re Gratton's Estate,* 136 Ore. 224 (298 Pac. 231, 79 A. L. R. 517); *Chicago, St. C. & M. R. Co.* v. *Larned,* 26 Ill. 218. It is said in 2 R. C. L. p. 954:

"The creation of the relation of attorney and client by contract express or implied is essential to the right of the attorney to compensation. * * * The essential feature of the professional relation is the fact of employment to do something in the client's behalf. There must be an agreement express or implied for compensation."

This proposition has been applied by the courts in cases where one of several interested parties has engaged the services of an attorney. It has been held that the attorney must look to the one who employed him for his compensation even though the others were incidentally benefited by his services and accepted such benefits. *Forman* v. *Sewerage & Water Board of New Orleans,* 119 La. 49 (43 South. 908, 12

Ann. Cas. 773); *Chicago, St. C. & M. R. Co.* v. *Larned, supra.*

On the other hand, and although not controlling here, there exists the generally recognized equitable principle that where one, among others, interested in a particular fund, employs an attorney by whose service the fund is enhanced, preserved or protected, the others entitled to claim in the fund, and so benefited, should share the expenses of such services. *Trustees* v. *Greenough,* 105 U. S. 527; *Buell* v. *Kanawha Lumber Corp.,* 201 Fed. 762; *American Engineering Co.* v. *Metropolitan By-Products Co.* (C. C. A.), 275 Fed. 40. The following statement of the rule is given in *Buell* v. *Kanawha Lumber Corp., supra:*

"The rule is established that where one goes into a court of equity, and takes the risk of litigation on himself, and successfully creates or preserves or protects a fund to a share in which others are entitled, those others will not be allowed to lie back and share the results of these successful labors without contributing their due share, and a court of equity by an equitable extension of the English principle has required the payment out of the fund (before distribution) of the reasonable costs and expenses, including the reasonable counsel fees of the complainant whose diligence created or preserved the fund for distribution."

In the instant case, there was unquestionably no contract between the estate and Ross H. Lamb. Ida May Collins, and Hallie Collins Patrick, legatees, could not obligate the estate by contract, either express or implied, to compensate an attorney, employed by them, for his services. The fees of an attorney employed by the executor or administrator of an estate are not paid from the assets of the es-

tate by virtue of the contract of employment between the attorney and such executor or administrator, but are allowed as expenses of administration when such services are necessary to the settlement of the estate. *In re Grover's Estate,* 233 Mich. 467.

Thus the case at bar presents the question of the allowance from an estate as administrative expenses of fees and expenses incurred not by the executor or administrator but by a residuary legatee. The question in its precise form has never been heretofore presented for consideration in this jurisdiction. Examination of the decisions of other States reveals the existence of conflicting opinion, but as a general proposition it may be stated that before such an item may be charged against the estate it must be shown that the services rendered were beneficial to the estate as a whole rather than to an individual or group of individuals interested therein. Numerous decisions have been collected in 79 A. L. R. 521.

A doctrine which permits a decedent's estate to be so charged, should, however, in our opinion, be applied with caution and its operation limited to those cases in which the services performed have not only been distinctly beneficial to the estate, but became necessary either by reason of laches, negligence or fraud of the legal representative of the estate. In the case of *In re Simons' Will,* 55 Conn. 239 (11 Atl. 36), an administrator withheld funds rightfully belonging to the estate and legal proceedings were necessary to obtain an accounting. In holding that it was proper to charge the estate with the fees of counsel employed by beneficiaries under the will, the court said:

"Whatever expense was reasonably incurred in recovering a portion of the estate should be allowed; expense incurred in respect to the personal demands of Mrs. Simons and Clara should not be allowed."

It has also been held, that where certain legatees assumed the burden of compelling a daughter of a decedent to restore to the estate certificates of deposit claimed by the daughter as a gift from the decedent made three days prior to the latter's death, it was proper to allow counsel fees of such legatees to be paid from the estate. *In re Lounsberry's Estate,* 226 App. Div. 291 (234 N. Y. Supp. 680). The following language is to be found in *Bean* v. *Bean,* 74 N. H. 404 (68 Atl. 409, 124 Am. St. Rep. 978):

"As executrices, it was the duty of the appellants to protect and conserve the estate committed to their care. But as they were personally interested in the property in question, claiming adversely to the estate to be the absolute owners of it, the interests of the estate in it were in fact protected by the intervention of one or more of the legatees, the appellees. That such intervention was reasonably necessary and prudent, the result of one of the suits seems to establish: *Bean* v. *Bean,* 71 N. H. 538 (53 Atl. 907). The result of that suit added to the estate or trust fund certain property which the executrices claimed to own individually. A finding by the superior court that the appellees are equitably entitled to reasonable compensation on this account out of the trust fund presents no error of law: *Burke* v. *Railroad,* 62 N. H. 531."

That some of the services rendered by Ross H. Lamb were beneficial to the estate cannot be denied. He secured the restoration to the estate of funds wrongfully withheld therefrom by the executrix. He secured the removal of the executrix when she failed and refused to comply with the order of the probate court requiring her to give bond which would be adequate in relation to the value of the property in her charge. That the executrix also employed counsel individually in an attempt to establish her erroneous

claims is no basis for her to complain of the rule invoked. Neither can it be said that the contest was one solely for the purpose of settling individual differences between the residuary legatees.

We, therefore, are of the opinion that it was not error to charge the estate with payment of the reasonable value of the services of Ross H. Lamb and his expenses in connection therewith.

Was the fee of $7,500 allowed to him excessive? In ascertaining the reasonable value of legal services, the court should consider the time spent, the amount involved, the character of the services rendered, the skill and experience called for in the performance of the work, and the results obtained. *Fry v. Montague,* 242 Mich. 391; *Baxter v. Szucs,* 248 Mich. 672; *Behr v. Baker,* 255 Mich. 607. The legal ability of Mr. Lamb is not challenged. It is not questioned that the results he obtained were satisfactory and beneficial. His activities relative to the recovery of the Newfoundland War Bonds involved the marshalling of evidence to dispute the claims of the executrix and the presentation of such evidence in a trial lasting two days. He likewise obtained the necessary evidence to establish ownership of the city bonds in the estate, although no appearance in court was essential in connection therewith. In addition he expended considerable time and effort in the proceedings resulting in the removal of the executrix. It is impossible for us to review all the various steps of the litigation with meticulous detail. He contends that a total of some 1,400 hours in addition to 26 days in court were devoted by him to the matters involved. There were no complicated legal questions involved in this case. The facts seem to have been quite readily ascertainable, and from our experience we cannot understand how an attorney could devote

nearly 10 months' work upon the issues that were there involved. Less than two days were devoted to the taking of testimony upon the issues involving the ownership of the bonds. The days spent in court in the removal of the executrix, it seems to us, would be very limited. The marshalling of the evidence at the best ought not to have taken to exceed two or three weeks. We are, therefore, constrained to hold that there was an abuse of discretion on the part of the trial court in making an allowance of $7,500 for attorney's fees. We believe that if Mr. Lamb is allowed $750 for the trial of the issue involving bonds, $500 for the time spent in looking up evidence, and $750 for services in the removal of the executrix, that this total is ample for all services rendered by him for the benefit of this estate. Although we are reluctant to disturb the findings of the trial court, a careful review of the record, bearing in mind the ability of counsel, the nature of the litigation, the results obtained and all other pertinent factors, we are obliged to hold that the trial court erred in fixing the value of the services at $7,500 and are of the opinion that they were reasonably worth $2,000. We are not bound by the expert opinion of attorneys who testified that the reasonable value of the services was from $8,900 to $10,000. *In re Rhea's Estate,* 126 Neb. 571 (253 N. W. 876). The attorneys in testifying to the value of Mr. Lamb's services based their opinion, as shown by the record, upon the claimed fact that Mr. Lamb had devoted 1,400 hours in his office besides 26 days in court, and the amount fixed by them would not be an unreasonable allowance for an attorney who had spent the best part of a year in the preparation and trial of a lawsuit.

The trial court also allowed the final account of the administrator *de bonis non* to be charged with

the expenses of Ross H. Lamb in the sum of $549.37. Included among the various expense items are three entries of "taxable attorney fees" relating to different proceedings in the total amount of $110, and two items of "motion fees" in the sum of $20. These were not properly allowed as expense items and should be deducted.

The reasonable value of the services of the administrator *de bonis non* was determined to be $1,042.23. This was a discretionary matter for the trial court. See *Mower's Appeal,* 48 Mich. 441; *In re Power's Estate,* 92 Mich. 106; *In re Brewster's Estate,* 113 Mich. 561; *In re Gallagher's Estate,* 120 Mich. 365. And we are also reluctant to disturb the findings in this regard. However, it appears that at the time he assumed his duties little remained for him to do except to receipt for the assets in the hands of the executrix and divide the residue. He, nevertheless, employed counsel and objections were filed to the extended final account of the executrix. What benefit was thereby accomplished does not appear. He claims to have devoted some 389 hours to the estate. His attorney, Mr. Fremont Evans, has been paid $700. A comparison of the time sheet of Mr. Miller with that of his attorney gives rise to a strong suspicion that there has been a duplication of services rendered. The administrator *de bonis non* should not receive compensation for services performed by his attorney even though he assisted the latter. After careful consideration we are of the opinion that $542.23 would be the fair value of the services of the administrator *de bonis non*.

We are of the further opinion that the court erred in allowing the account to be charged with the fee of the auditors employed by Ida May Collins in the amount of $865. The record fails to indicate that

the services were in any respect beneficial to the estate or that the results of the audit were of any assistance whatsoever in accomplishing the recovery of the concealed assets.

This cause will be remanded to the circuit court with instructions that the order of July 29, 1936, be modified in accordance with this opinion.

No costs will be allowed.

NORTH, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred with CHANDLER, J.

WIEST, J. (*dissenting in part*). I do not join in the award to Mr. Lamb.

He took no part in the proceedings in the probate court but was employed by persons having a residuary interest in the distribution of the estate to appeal from the allowance of the final account of the executrix and, for his services, to have 25 per cent. of the total recovery, if he could not obtain compensation out of the estate. The express contract for compensation out of such specified source or fund bars a *quantum meruit* allowance against the estate.

Will the allowance against the estate of less than the amount called for by the employment contract satisfy that contract or merely be applied thereon?

If it does not satisfy the contract agreement then may Mr. Lamb recover in part on *quantum meruit* against the estate and the remainder under the express agreement out of the fund recovered?

FEAD, C. J., concurred with WIEST, J..