# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF JAMES V. WARD, JR.

---

JAMES V. WARD, III,

        Petitioner-Appellant,

v

KAREN POWERS,

        Respondent-Appellee.

UNPUBLISHED
October 6, 2016

Nos. 327991 & 329132
Ingham Probate Court
LC No.   13-000639-DA

---

Before:  RIORDAN, P.J., and METER and OWENS, JJ.

PER CURIAM.

In these consolidated cases arising from a will contest, appellant appeals as of right from the probate court's orders declaring the will invalid, denying a motion to set aside the judgment, and determining heirs.  Appellant also challenges the probate court's determinations that appellee is entitled to attorney fees and those fees are to be paid by appellant personally.  We affirm in part and reverse in part.

Appellant is the son, and appellee the daughter, of the decedent.  Appellant's theory of the case was that the decedent executed a will leaving virtually the entire estate to him, to the near-exclusion of appellee.  The latter's theory was that appellant forged the document he wished to enter into probate, and thus that the decedent's estate should pass according to the laws of intestacy, in three equal shares, to the parties and their half-brother, the decedent's stepson.

The jury concluded that the putative will was invalid.  The probate court thereafter determined that appellee was entitled to attorney fees to be paid by appellant personally, and that the decedent's intestate heirs included the decedent's stepson along with the parties.

## I.  MOTION TO SET ASIDE JUDGMENT

Appellant first challenges the probate court's denial of his motion to set aside the judgment.  We review for an abuse of discretion a court's decision to deny a motion to set aside a judgment.  *Gillispie v Bd of Tenant Affairs of Detroit Housing Comm*, 145 Mich App 424, 427-428; 377 NW2d 864 (1985).  "An abuse of discretion occurs when the decision results in an

-1-

outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

The parties do not dispute the facts underlying this issue. Appellant was not served with the judgment until after the time had run for post-trial motions, and sought to have the judgment set aside so that the clock could start to run anew in connection with a new judgment. The probate court impliedly concluded that appellee had exercised due diligence in the matter while appellant had not.

We decline to determine whether appellee was a party securing the judgment for purposes of MCR 2.602(D)(1), and, if so, whether the probate court was overly lenient in ascribing due diligence to a party who failed to consider the possibility that MCR 2.602(D)(1) required service of the order in this instance, because we conclude that any error in the matter was harmless. This is because appellant puts forward on appeal, as the only lost opportunity from the delay in question, the ability to move the trial court for a new trial on the ground that the verdict was contrary to the great weight of the evidence, and we conclude that any such motion would have been futile.

MCR 2.611(A)(1)(e) authorizes a court to grant a new trial if a party's substantial rights have been materially affected because of "[a] verdict or decision against the great weight of the evidence . . . ." However, conflicts in the evidence and the credibility of witnesses are matters for the fact-finder to resolve. *Dawe v Dr Reuven Bar-Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010). Accordingly, "a jury's verdict should not be set aside if there is competent evidence to support it." *Id*. Even "when testimony is in direct conflict and testimony supporting the verdict has been impeached, if 'it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it,' the credibility of witnesses is for the jury." *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998), quoting *Anderson v Conterio*, 303 Mich 75, 79; 5 NW2d 572 (1942).

Appellant points out that the testimony of the attorney who recounted drafting a will for the decedent comported with his own account of the decedent's preparing a will favoring him largely to the exclusion of appellee, and asserts that concluding that the will at issue was invalid meant concluding that the attorney was lying. That assertion is oversimplified, however. Aside from the jury's prerogative to doubt the attorney's honesty, with or without identifying a motive to lie, the jury was entitled to doubt the accuracy of the attorney's recollections, however honestly he endeavored to report them. Further, even if the attorney's account was entirely accurate concerning the decedent's wish to provide more generously for appellant than for appellee, or their half-brother, that still leaves open the possibility that appellant manufactured a document that resembled the original but that purported to give him a still greater advantage over his siblings.

Appellant also points out that a neighbor at one of the decedent's vacation homes testified that she read the will to appellant before sending it to the latter's attorney after the decedent died, and argues that the neighbor "would know if the will . . . presented to probate was not the will she gave to [appellant's attorney], and yet she testified that it was the same will." Appellant again insists that concluding that the will was invalid meant concluding that a credible witness

was lying.  We again bear in mind that the jury was free to doubt the neighbor's honesty. Beyond that, the jury would not have had to deem the neighbor dishonest to suspect that she did not apply sufficient studiousness when she read the will to appellant, or did not scrutinize the trial exhibit closely enough, to notice if there were differences between what she had read to appellant and what she saw at trial.

Appellant additionally argues that appellee's document examiner offered internally inconsistent testimony, having opined both that the signature in question was forged and that the signature page at issue had been copied at a different time or on a different machine from the rest of the pages.  According to appellant, "Either signatures were forged on a will that [the decedent] did not have prepared, or real signatures were taken from one document and attached to a document that was never actually signed.  It does not make sense for both of these to be the case."  Appellant has put forward false alternatives.  If appellant was in fact relying on a photocopy of a forged will, he might well have later discovered an error, or improved his ability to mimic the needed signatures, or seized an opportunity to incorporate one or more real signatures from other documents, and so separately photocopied a new signature page to present with the rest of the forgery.

For these reasons, appellant has brought to light only normal credibility contests or other conflicts in the evidence; he has not shown that the verdict depended on testimony that was impeached to the degree that it was, as a matter of law, deprived of all probative value.  See *Lemmon*, 456 Mich at 643.

Because appellant had nothing to gain from acting on the one opportunity he complains was lost as the result of late service of the judgment, any error in the probate court's refusal to set aside the judgment was harmless and there is no basis for reversal.

## II.  STEPSON AS INTESTATE HEIR

Appellant next argues that the probate court erred in determining that the decedent's stepson joined the parties as heirs to the decedent's estate under the laws of intestacy.  This Court reviews the probate court's findings of fact under the clearly erroneous standard.  MCR 2.613(C).  A finding is clearly erroneous if, although evidence may exist to support it, this Court is left with a definite and firm conviction that the lower court made a mistake.  *In re Crystal Lee Hill*, 221 Mich App 683, 692; 562 NW2d 254 (1997).

Not in dispute is that the basis for deeming the stepson eligible to inherit under the laws of intestacy is MCL 700.2114(1)(b)(*iii*), under which "a man is considered to be the child's natural father for purposes of intestate succession" if the man and child "have established a mutually acknowledged relationship of parent and child that begins before the child becomes age 18 and continues until terminated by the death of either."

Appellant challenges the probate court's conclusion that the relationship between the decedent and his stepson satisfied these criteria solely on the ground that the latter's having served a 10-year prison term in Florida defeated the requirement that the parent and child relationship continue until terminated by the death of either.

-3-

The stepson admitted in deposition that he served a term of 10 years' imprisonment in Florida, beginning in 1993. Asked if he maintained contact with the decedent while imprisoned, the stepson answered in the affirmative, but elaborated, "Not a lot, though," adding that he and the decedent "talked, but dad don't [sic] have a lot of conversation . . . when you're in prison and . . . that's just how my dad is." Asked if the decedent ever visited him in prison, the stepson answered in the negative, but added, "there was [sic] a couple times he was going to but dad never did come down there."

In rejecting appellant's theory that the stepson's imprisonment interrupted the continuity of the latter's relationship with the decedent, the probate court stated, "The Court, having experienced numerous cases in which parents or the child have been incarcerated and a relationship continued[,] I'm of the opinion that that relationship did continue for [the stepson]."

The probate court, having called upon its experience from other cases, apparently credited the stepson's testimony that he and the decedent "talked" while he was in prison; it may have been "[n]ot a lot," but, even so, it was enough that the decedent formed plans, albeit unfulfilled ones, to visit the stepson in person "a couple of times . . . ." This well enough explained the court's conclusion such that we are not left with a definite and firm conviction that the court made a mistake. See *In re Hill*, 221 Mich App at 692.

### III. ATTORNEY FEES

Appellant challenges the probate court's determination that appellee was entitled to recover her attorney fees.[1]

"Awards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception." *Phinney v Perlmutter*, 222 Mich App 513, 560; 564 NW2d 532 (1997), impliedly overruled on other grounds by *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 290; 696 NW2d 646, amended 473 Mich 1205 (2005). This Court reviews a trial court's award of attorney fees for an abuse of discretion. See *In re Condemnation of Private Prop for Hwy Purposes*, 221 Mich App 136, 139-140; 561 NW2d 459 (1997). "A court by definition abuses its discretion when it makes an error of law." *In re Waters Drainage Dist*, 296 Mich App 214, 220; 818 NW2d 478 (2012).

In this case, the trial court recited that case law could provide a basis for shifting attorney fees, then quoted, as "underlying authority for the court to grant attorney's fees to a non-fiduciary," from MCL 700.7904(1), which states: "In a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding." In referring to this legislation as "underlying authority," the probate court apparently regarded the statute quoted as directly

---

[1] We exercise our discretion to address this issue. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

applicable, not merely instructive. To the extent the court did so, it did so in error. MCL 700.7904(1) concerns "a proceeding involving the administration of a *trust*" (emphasis added), not a proceeding to determine the validity of a will. Although the relationship between a personal representative and the attendant decedent's estate is similar in some ways to that between a trustee and the attendant trust, those respective offices and instruments are plainly different, such that a statute's statement that it applies to proceedings involving the administration of a trust should not be interpreted to render the statute applicable also to will contests.

The trial court also cited *In re Clarence W Temple & Florence A Temple Marital Trust*, 278 Mich App 122; 748 NW2d 265 (2008). In that case, this Court affirmed the denial of attorney fees to a beneficiary under a trust who successfully litigated against recognition of a purported amendment to the trust, on the grounds that the petitioner had litigated a question of trust construction for the petitioner's "own interest as a beneficiary and not that of the estate as a whole," and "did not preserve or enhance the value of the estate." *Id*. at 141. In this case, the trial court held that "the services rendered by the Respondent's attorneys arguably preserved the estate's assets by preventing the estate [from being] distributed based on an invalid will." However, this Court specifically rejected the argument in *In re Temple Trust* that "the litigation benefited the estate by enforcing the settlors' original intent." *Id*. at 139.

*In re Temple Trust* further reiterated that awarding attorney fees incurred " 'not by the executor or administrator but by a residuary legatee' " should be " '*limited to those cases in which the services performed have not only been distinctly beneficial to the estate, but became necessary either by reason of laches, negligence or fraud of the legal representative of the estate.*' " *Id*. at 140-141, quoting *Becht v Miller*, 279 Mich 629, 638; 278 NW 294 (1937) (emphasis added by *In re Temple Trust*). The mention of "fraud" as a reason to shift fees catches the eye in this case, given that petitioner was adjudged to have been offering a forged will to probate. However, as *Becht* and *Temple Trust* made clear, a beneficiary seeking attorney fees incurred while exposing a fraud on the part of the estate's legal representative must show that in so doing that beneficiary was accomplishing something distinctly beneficial to the estate, instead of to the beneficiary personally. Such was not the case here. The trial court erred in determining that respondent was entitled to attorney fees.[2]

Affirmed in part and reversed in part.

/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Donald S. Owens

---

[2] Appellant halfheartedly argues that *he* should have been awarded fees under MCL 700.3720. He raises the argument but then fails to mention it in the "conclusion" and "relief requested" sections of his brief. At any rate, the argument he does raise is unpersuasive; the statute does not provide a basis for awarding appellant fees.