## MERKEL v. LONG.

1. STATUTES—TITLE OF ACT—PROBATE CODE—DODGE ACT.

  The title of the probate code stating, among its purposes, that of consolidating statutes governing the probating of estates and statutes of descent and distribution of property, and to repeal certain unspecified acts, was broad enough to encompass the Dodge act relating to probating and distributing assets of a decedent's estate, as well as the repeal of the Dodge act (PA 1921, No 249; CL 1948, §§ 702.45–702.49).

2. WILLS—CONSTRUCTION—JURISDICTION OF CIRCUIT COURT.

  The circuit court has jurisdiction under the probate code to entertain a bill for approval of an agreement to settle a controversy as to the construction and effect of provisions in a will (CL 1948, §§ 702.45–702.49).

3. SAME—CONSTRUCTION—GOOD-FAITH CONTROVERSY.

  It is not necessary to the existence of a good-faith controversy as to the construction and effect to be given to the provisions of a will that there be bad blood, epithets, name-calling, or rancor; although there must be more than just an academic difference of opinion as to how some provision of the will may or ought to be interpreted by a court at some future time (CL 1948, §§ 702.45–702.49).

---

\* Continued from volume 367 Michigan.

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur, Statutes §§ 310–314.
[2] 57 Am Jur, Wills § 1023 et seq.
[4] 16 Am Jur, Declaratory Judgments § 10.
[5] 16 Am Jur, Declaratory Judgments § 30.
[6] 16 Am Jur, Declaratory Judgments § 8.
[7, 8] 16 Am Jur, Declaratory Judgments §§ 18, 19.
[13] 14 Am Jur, Costs § 98.

4. DECLARATORY JUDGMENT—RIGHTS NOT IN PRAESENTI—PRESENT
CONTROVERSY.

> There is actual need of and justification for a declaratory adjudication of rights which, although not rights *in praesenti*, are rights which are to come into full fruition or which will be fully vested at some future time and there are uncertainties and controversies between interested parties as to what their respective rights will be when such rights accrue or become vested, and to avoid needless hazards or possible losses, it is necessary to have a decision of such uncertain or controverted rights.

5. WILLS—SETTLEMENT AGREEMENT AS TO CONSTRUCTION—APPROVAL
BY COURT.

> Present court determination of what will happen to the corpus of 3 trusts testator had set up in his will for his 3 daughters, so that they may the better determine what to do with respect to their own sizable estates by way of making *inter vivos* or testamentary disposition, constituted a sufficient basis for filing a bill to approve a settlement agreement in respect to disposition of the corpus of the estate upon termination of the trusts, where there were various ways of interpreting the provisions for terminating the trusts (CL 1948, §§ 702.45–702.49).

6. DECLARATORY JUDGMENT—CONSTRUCTION OF STATUTES.

> The declaratory judgment statute is remedial in character and should be accorded a liberal construction to carry out the purposes underlying such judgments (CL 1948, § 691.501 *et seq.*).

7. SAME—DETERMINATION OF FUTURE RIGHTS.

> One great purpose of a declaratory judgment is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of their rights, that they may guide their actions accordingly and keep them in lawful bounds, and avoid the expense, bitterness of feeling, and disturbance of the orderly pursuits of life incident to lawsuits, it being sometimes necessary to determine rights which will arise or become complete only in the contingency of some future happening (CL 1948, § 691.501 *et seq.*).

8. SAME—PRESENT RIGHTS.

> Rights subject to determination under a declaratory judgment act must involve a present right and may not be so remote and speculative as to be hypothetical and abstract, and a useful purpose must be served (CL 1948, § 691.501 *et seq.*).

9. WILLS—TRUSTS—CONSTRUCTION—SETTLEMENT AGREEMENT—GOOD-FAITH CONTROVERSY.

An agreement between testator's 3 daughters with respect to the terminal disposition of the corpus of the 3 trusts he had left by will, providing for payment of net income to them for as long as they should live and the whole share to be "distributed as the laws of Michigan provide", which presented a harmonious disposition of the corpus of the trusts and avoided the expense and needless delay of distribution of the corpus at the death of a daughter if the matter be left to litigation at that date, *held*, to justify trial court's approval and direction to guardian *ad litem* and trustees to sign the agreement, a good-faith controversy for settlement being involved since the quoted provision was subject to various interpretations (CL 1948, § 691.501 *et seq.*; §§ 702.45–702.49).

10. SAME—SETTLEMENT AGREEMENT—GOOD-FAITH CONTROVERSY AS TO CONSTRUCTION—FINDING OF COURT.

The trial court must make a finding that the effects of an agreement to settle a good-faith controversy as to the construction to be given a provision of a will in which unknown, unborn, or unascertained persons are involved are just and reasonable as to interests of any represented by fiduciary or guardian *ad litem* (CL 1948, §§ 702.45–702.49).

11. SAME—SETTLEMENT AGREEMENT AS TO CONSTRUCTION—APPROVAL BY COURT.

Agreement executed by 3 daughters of testator, their husbands and all of their adult children but not by the successor trustees under his will nor by guardians of incompetent or minor children, which served to clarify the disputed provision as to disposition of the corpus of the 3 trusts for the daughters, his only children, which the trial court found to be just and reasonable as to the interests of persons represented by fiduciary or guardian *ad litem*, *held*, to have been properly approved (CL 1948, §§ 702.45–702.49).

12. SAME—TRUSTEES—SETTLEMENT AGREEMENT—PARTIES.

Trustees under a will containing a provision relative to disposition of the corpus of each of 3 trusts testator had left for his 3 daughters, his only children, which was subject to various interpretations, were necessary parties to an agreement of settlement which specified the construction to be given the provision but, in signing such agreement as trustees they incur no personal liability by virtue of pertinent statute nor by agreement, approved by the circuit court and the Supreme

Court, as they would have it amended, which, as is amended they are directed to sign (CL 1948, §§ 702.45–702.49).

13. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.
No costs are allowed in suit relative to approval of agreement which settled the construction to be given a provision of a testamentary trust, where trustee defendants have obtained an amendment to the agreement relieving them from personal liability, since neither side has prevailed in full (CL 1948, §§ 702.45–702.49).

Appeal from Wayne; Piggins (Edward S.), J. Submitted January 10, 1962. (Docket No. 63, Calendar No. 49,418.) Decided October 1, 1962.

Bill by Frances Gray Merkel and others, naming as defendants Irvin Long and Mack Ryan, successor trustees under the will of Paul R. Gray, deceased, and known and unknown possible beneficiaries and heirs of Paul R. Gray, for order approving settlement agreement in respect to disposition of corpus of estate upon termination of trust provisions. Decree for plaintiffs directing trustees to execute settlement agreement. Defendant trustees Long and Ryan appeal. Affirmed as modified.

*Lewis & Watkins, Samuel M. Lane,* and *Dickinson, Wright, McKean & Cudlip,* for plaintiffs.

*Long, Ryan, Grylls, Franseth & Spicer,* for trustee defendants Long and Ryan.

DETHMERS, J. This is a chancery action, filed under the so-called Dodge act (PA 1921, No 249, as re-enacted in the probate code, PA 1939, No 288 [CL 1948, § 702.45 *et seq.* (Stat Ann § 27.3178[115] *et seq.*)]), for approval of an agreement to settle a controversy as to the construction and effect of certain provisions of the last will and testament of Paul R. Gray and as to the rights of persons there-

under. The trial court entered an order approving the agreement and authorizing and directing the successor trustees under the will and the duly-appointed guardians *ad litem* to enter into and execute the agreement of settlement and so complete it in conformity with the governing statute. Defendant successor trustees under the will declined to sign and took this appeal. Hereinafter they will be referred to as the trustees.

Testator died in 1929 leaving surviving him as sole heirs at law his widow and 3 married daughters who are all the children he ever had. His will was admitted to probate. After specific bequests, it devised and bequeathed the residue of his estate to his executor and trustee, in trust, for specific purposes, with directions that he "shall then set apart one-third (1/3) for the use of my wife and shall divide the remainder into as many portions or shares as there are children of mine living, or deceased children leaving lawful issue, and a share shall be set apart by my said trustee for each child of mine living, and the share of each deceased child shall be divided into as many portions as there are children living at my death of such deceased child, and a share shall be set apart for each such child." The will then directed the trustee to pay the net income from the wife's share to her and provided that at her death the principal sum of her share shall be distributed as the laws of Michigan provide. Next, the will directed the trustee to pay the net income of each child's or grandchild's share to such child or grandchild "so long as he or she shall live, at which time the whole of his or her share *shall be distributed as the laws of Michigan provide.*" The italicized language for distribution, at their deaths, of the shares of the 3 daughters (because none of his children predeceased him) as the laws of Michigan

provide presents the question sought to be settled by the agreement.

Testator's widow received the prescribed income during her lifetime. She died in 1945, leaving as her sole heirs-at-law the 3 daughters who, with her, had been testator's sole heirs-at-law at his death. The principal sum of the widow's share was then distributed and divided equally between the 3 daughters, becoming their property outright.

As far back as in 1955 question arose in the minds of the 3 daughters, their husbands and their counsel concerning the above noted testamentary provisions. Counsel for some of plaintiffs advised that the words in question could be interpreted as providing, at the death of each of the 3 daughters, respectively, for any one of the following:

"(1) Corpus to be distributed to heirs of the life beneficiary.

"(2) Corpus to be distributed to heirs of testator,
  (a) determined as of the date of his death,
  (b) determined as of the date of life beneficiary's death.

"(3) Corpus to become part of the estate of the life beneficiary, and pass by her will if she left one, or to her heirs if she should die intestate.

"(4) The corpus to be distributed as the life beneficiary may provide by the exercise of a power of appointment."

The settlement agreement was entered into in 1960. It was signed by the 3 daughters, their husbands and all of their adult children, except one of the latter who was mentally incompetent. The signers are also plaintiffs in the case. Named as defendants are the 2 successor trustees under the will, who also are the appellants here, the mentioned mentally incompetent grandson of testator, the minor children and the grandchildren, all of whom were minors, of the 3 daughters, and the unknown, unborn,

unascertained heirs, devisees and legatees of the 3 daughters and of testator, determined as of each of the 3 successive times when one of the 3 daughters should die. Guardians *ad litem* were appointed for all of these defendants who could not act for themselves, who appeared and made reports and recommendations to the court favorable to this settlement. The 2 trustees appeared and alone contested this action.

Pertinent provisions of the agreement as presented to the court read as follows:

"1. Paragraph Third (e) of the will of the deceased shall finally and for all purposes be construed to provide that upon the death of each of the daughters of the deceased named in paragraph (b) above, the trust for her benefit shall terminate and the entire corpus thereof shall be distributed as follows:

"A. In equal shares to her then surviving children and the then surviving lawful lineal descendants, by right of representation, of any then deceased child or children.

"B. If she leave no child or other lawful lineal descendant her surviving, then in equal shares to her then surviving sisters and the then surviving lawful lineal descendants, by right of representation, of any then deceased sister or sisters.

"C. If she leave no child or other lawful lineal descendant or sister or lawful lineal descendant of any sister of her surviving, then to those who would be entitled to distribution of her personal estate under the intestacy laws of the State of Michigan then in force.

"2. The agreed construction set forth in paragraph 1 above shall be forever binding and conclusive upon the parties hereto, subject to the condition, but solely to the condition, that this agreement is completed by the due execution hereof by the successor-trustees of the trusts created under the provisions of paragraph Third of the will of the deceased and the guardians or guardians *ad litem* of all other persons

who have, or may have, interests which are, or may be, affected thereby but who have not attained majority or are otherwise without legal capacity to act in person, in accordance with an order entered by the circuit court in chancery of Wayne county, Michigan, pursuant to the provisions of sections 702-.45 through 702.49, Michigan Compiled Laws of 1948, approving this agreement and authorizing and directing completion of execution hereof by such successor-trustees and such guardians or guardians *ad litem.*"

After hearing, plaintiffs submitted a proposed order approving the agreement and authorizing and directing its signature by the trustees and the guardians *ad litem.* Defendant trustees thereupon filed objections to the proposed order. Their main objection went to the requirement in the order that they sign the agreement. They stated in their objections a willingness to sign the agreement, amended as hereinafter indicated, if the order or decree should approve such amendment by containing in it a provision as follows:

### Clause in Decree Directing Signature by Trustees

"Trustees Irvin Long and Mack Ryan have no interest in the ultimate distribution of the trust assets when the several trusts expire, except that they must obey the order of the probate court of Wayne county in respect to such distribution and the division of same between the parties as such court shall determine to be entitled thereto. Wherefore, they are hereby authorized to sign the agreement attached as exhibit A to the bill of complaint in the manner following:

" 'The undersigned, Irvin Long and Mack Ryan, successor trustees under the will of Paul R. Gray, deceased, execute this instrument only to acknowledge notice thereof, and to permit the filing thereof

contemplated by Act 249, Public Acts of Michigan of 1921, as amended. The only obligation assumed by them in signing this instrument shall be and is limited to the duty of presenting evidence of this contract, and of the decree entered in Wayne circuit chancery file #600,767, to the probate court of the county of Wayne at the time they file their final accounts as trustees for any trust terminated by the death of the life beneficiary. No rights of any person who may claim a right to the assets of such trust, on termination thereof, shall be deemed created, extinguished, augmented, diminished or altered by such execution hereof by them.'

and upon such signature, this agreement shall become and be effective as to all other parties signatory."

Inasmuch as the burden of trustees' written objections to the proposed decree consisted of their unwillingness to sign the agreement and, as they profess to believe, thereby assume a possible personal liability, and, further, the relief prayed for in their brief filed on this appeal states that their only interest is to be relieved of the duty imposed upon them by the order below to sign the agreement, our disposition of that subject as hereinafter set forth might be deemed to obviate the necessity for our discussion of questions raised in their brief going to the existence of statutory authority for and the validity of the agreement and order below. However, the interests of many persons other than the trustees are involved and the validity of the agreement and order ought to be determined here to insure orderly disposition hereafter of the trust and estate. Consequently, we shall touch briefly on such questions.

Trustees say the circuit court was without jurisdiction to make the order entered because the Dodge act, PA 1921, No 249, was repealed by the probate

code, PA 1939, No 288, and, although the legislature undertook to re-enact it, word for word, in the probate code,* the title thereof was not broad enough to include a provision conferring Dodge act jurisdiction on a circuit court, so that, in consequence, such provision is unconstitutional. They point out that the title did, however, include a statement that the act was for the purpose of repealing certain unspecified acts, and, therefore, the repeal was valid. The title of the probate code stated, among its purposes, that of consolidating statutes governing the probating of estates and statutes of descent and distribution of property. We think this was broad enough to encompass, among the statutes being consolidated, the Dodge act relating to probating and distributing assets of a decedent's estate. It certainly is as broad in that respect as is the title language about repeal of certain acts. We cannot agree that under the title the repeal was consummated but the re-enactment failed. The circuit court did have jurisdiction under the probate code and the bill of complaint may be deemed to have been laid thereunder.

Trustees challenge existence of a good-faith controversy between signatories to the agreement prior to its making and the filing of this action. This, of course, is made a prerequisite by the statute. However, bad blood, epithets, name-calling, or rancor are not required.

We agree with trustees that mere existence of "an academic difference of opinion as to how some provision of a will may or ought to be interpreted by a court at some future time" is not enough to warrant Dodge act proceedings. Applicable, nevertheless, from *City of Flint* v. *Consumers Power Company,* 290 Mich 305, 309, 310, is the following:

---

* CL 1948, § 702.45 *et seq.* (Stat Ann § 27.3178[115] *et seq.*).— REPORTER.

"But the rights to be determined by declaratory judgment or decree may be and perhaps usually are rights not *in praesenti,* but rights which are to come into full fruition or which will be fully vested at some future time. If uncertainties and controversies arise between interested parties as to what their respective rights will be when such rights accrue or become vested, and to avoid needless hazards or possible losses, it is necessary presently to have decision of such uncertain or controverted rights, then there is actual need of and justification for declaratory adjudication."

Trustees say that desire on the part of the daughters for present court determination of what will happen to the corpus of their trusts at their deaths so that they may the better determine what to do with respect to their own sizable estates by way of making *inter vivos* or testamentary disposition is not a sufficient basis for this action. Under the circumstances as herein briefly noted, we think it may well be. Pertinent as to facts is the following taken from plaintiff's brief:

"Some time prior to October 31, 1955, Mr. Long (1 of appellant trustees) had discussed with at least 1 of the plaintiffs the uncertainty arising from the fact that the here pertinent provision of the will of Paul R. Gray, deceased, was subject to various interpretations. Thereafter, prior to the year 1958, each of the income beneficiaries of the 3 trusts retained counsel to advise her and represent her interests. One of the beneficiaries affirmatively asserted the position that upon termination of 'her' trust the remainder would be distributable to the heirs of Paul R. Gray, her counsel having advised her that such position was not only tenable but also of probable pecuniary advantage to her because her expectancy was greater than that of her 2 sisters. The beneficiary of at least 1 of the other 2 trusts was opposed to any formula of distribution which would

disinherit her husband, and asserted the position that upon termination of her trust, the remainder properly should be distributed to her heirs."

Back in 1956 counsel for the husband of 1 of the 3 daughters, a plaintiff herein, wrote him as follows:

"Perhaps the most important consideration for the life income beneficiaries and their children in attempting to deal with their respective interests under the will is that presented by the possible impact of estate and inheritance taxes. The amounts held in the trusts are such that, when taken together with other property which the life income beneficiaries individually own, it becomes not only extremely difficult but practically impossible to work out appropriate provisions for the allocation of the burden of such taxes through alternative testamentary or *inter-vivos* action.

"The situation presented is not one where the various possibilities of construction may be anticipated and appropriately taken care of by alternative provisions in the will of any 1 person. The ramifications of the various possibilities are such that alternative action would be required not only by all 3 of the life income beneficiaries but by all of their issue as well and the longer the lives of the life income beneficiaries continue the more complicated the problem of making appropriate alternative provisions becomes.

"Finally, if the proper construction of the will is not submitted to a court for determination until after the death of a life income beneficiary occurs, the trustee will be confronted with the necessity of withholding distribution of the trust corpus until that determination is finally made. This could serve to postpone the distribution for a period of years. Such a possibility should not be countenanced if it can be avoided without prejudice to the rights of the interested parties and, as already indicated, their rights may as adequately be protected now as at any time in the future."

Trustees say the question of will construction need not now be decided, but can better await determination when 1 of the daughters dies. As said in *Sigal* v. *Wise*, 114 Conn 297, 301, 302 (158 A 891):

"The remedy by means of declaratory judgments is highly remedial and the statute and rules should be accorded a liberal construction to carry out the purposes underlying such judgments. One great purpose is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of lawsuits. Fully to carry out the purposes intended to be served by such judgments, it is sometimes necessary to determine rights which will arise or become complete only in the contingency of some future happening."

Borchard, Declaratory Judgments (2d ed), pp 422–424, contains an apt statement:

"The declaratory judgments act necessarily deals with present rights, but it is a present right to have a judicial assurance that advantages will be enjoyed or liabilities escaped in the future. Courts continually declare rights which have not become fixed under an existing state of facts, but are prospective only; they may not, however, be so remote and speculative as to be hypothetical and abstract.

"It is nearer the truth to say that the courts will not determine future rights in anticipation of an event that may never happen, although even that generalization is probably a little broad. * * *

"The general survey in this chapter will have indicated that the courts no longer hesitate, even in England, to declare legal relations to become active in the future, provided there is a tangible present

interest in their determination and a useful purpose is thereby served."*

Here, the question of interpretation of the will is not academic. Rights of parties to the agreement are affected directly. The question will not become moot. When the daughters die it must at all events be decided. It will be no different question then than now. To quote the language of Borchard, above, "a useful purpose" will be served by present conclusion of the matter. The knowledge and certainty derived therefrom by the daughters will materially aid them in determining upon *inter vivos* or testamentary disposition of their own property to or among those of whom the rights of some are affected by the agreement, and also in resolving matters having a real tax significance. As stated in *Sigal,* present harmonious disposition of the matter as in the agreement provided will serve to "avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of lawsuits" as well as the needless delay of distribution of the corpus of the trust fund at the death of a daughter, if the matter be left to litigation at that late date. There was here such good-faith controversy as is made by the statute essential to these proceedings.

While trustees raise no direct question as to whether the effects of the agreement are just and reasonable as to the interests of any represented by fiduciary or guardian *ad litem,* the statute makes a finding by the court to that effect a prerequisite to its approval thereof. The trial court made such finding, which we think the record warrants and we affirm. In this connection we note the provision in the will that if one of his children should predecease

---

* See, by way of comparison, the authorization to make declaratory judgments or decrees. CL 1948, § 691.501 *et seq.* (Stat Ann § 27.501 *et seq.*).—Reporter.

testator, then the trustee should take the share which would have been for the benefit of such deceased child had she lived and divide it into as many portions as there are children living at his death of such deceased child and set it apart for each such child. This squares much more nearly with interpretation of the disputed testamentary language in accord with the life beneficiary-heir theory, to which the agreement gives effect, than with the testator-heir theory. Otherwise testator would seem to have discriminated, for no apparent reason, between the children of daughters surviving him and those of a daughter predeceasing him. The agreement serves to clarify testator's will, not to substitute a new and different one for it.

Coming now to the matter which is the trustees' chief concern on this appeal, namely, the requirement in the order that they sign the agreement, the following questions are raised by them:

(a) Are the trustees necessary parties to the agreement?

(b) Does the statute confer power on the court to compel their signatures?

(c) May a State, through legislation or court action, compel trustees to assume contractual obligations without violating Michigan Constitution of 1908, art 2, § 16, or the Fourteenth Amendment to the Federal Constitution?

(d) Would their signatures impose a personal liability on them?

(e) Are they acting equitably in declining to sign?

These we consider, together, only insofar as is necessary to our disposition of this phase of the case.

The language of section 47 of the act (CL 1948, § 702.47 [Stat Ann § 27.3178(117)]), providing for the court's authorizing the trustees' signatures and that the agreement is made complete and becomes valid and binding upon being so signed and filed,

can scarcely be read to mean other than that the trustees' signatures are required and that they are, therefore, necessary parties. Nowhere in the statute, however, does a legislative intent appear that those in the position of the trustees must, by reason of such signatures, or for any other reason, be made personally liable for damages to any whose interests are injured by the agreement. If the order and agreement were drawn to include the proposal submitted by the trustees in their written objections to the proposed order, absolving them from such personal liability, no problem would remain as to their liability, or the court's power to require their signatures or the constitutionality of such requirement. We think this the proper course to be followed. With the agreement and order so amended the trustees can have no sound objection to signing, in view of our decision as to questions of validity. Such order may require their signatures, compliance with which the trustees then may only properly avoid by resignation as trustees.

The order or decree will be modified in conformity herewith and so affirmed. No costs, neither side having prevailed in full.

Carr, C. J., and Kelly, Black, Kavanagh, Souris, Otis M. Smith, and Adams, JJ., concurred.