### MERKEL v. LONG.

TRUSTS—FEES—COUNSEL FOR BENEFICIARIES—GUARDIAN AD LITEM—EQUALLY DIVIDED COURT.

    Order denying testamentary trustees' motions to dismiss petitions by attorneys representing beneficiaries in proceeding to obtain approval of settlement agreement in respect to disposition of corpus of estate upon termination of trust provisions and by guardians *ad litem* for fees is affirmed by the Supreme Court equally divided as to liability of trust estate for fees of counsel for beneficiaries (CL 1948, §§ 702.45–702.49).

Appeal from Wayne; Piggins (Edward S.), J. Submitted November 8, 1963. (Calendar No. 72, Docket No. 50,383.) Decided December 27, 1963. Rehearing granted February 5, 1964.

In the case of Frances Gray Merkel and others against Irvin Long and Mack Ryan, successor trustees under the will of Paul R. Gray, following approval of compromise agreement, petitions were filed by Dickinson, Wright, McKean & Cudlip, Lewis & Watkins, Samuel M. Lane, and others, for attorney

REFERENCES FOR POINTS IN HEADNOTE

5 Am Jur 2d, Appeal and Error § 902.

Allowance of attorney's fees against property or fund increased or protected by attorney's services. 49 ALR 1149; 107 ALR 749.

Allowance of attorneys' fees in, or other costs of, litigation by beneficiary respecting trust. 9 ALR2d 1132.

Allowance out of decedent's estate for services rendered by attorney not employed by executor or administrator. 79 ALR 521.

fees and expenses. From denial of trustees' motions to dismiss petitions and enter summary judgments, they appeal. Affirmed by Supreme Court that is equally divided between affirmance and reversal as to counsel fees for beneficiaries and affirmance as to counsel fees for guardians *ad litem.*

*Dickinson, Wright, McKean and Cudlip (Robert E. McKean,* of counsel), *Lewis & Watkins (Clarence J. Boldt, Jr.,* of counsel), and *Samuel M. Lane,* all *in propriis personis.*

*Long, Ryan, Franseth & Spicer (Irving Long,* of counsel), for trustees Long and Ryan.

CARR, C. J. *(for affirmance).* Some question having arisen as to the proper interpretation of provisions of the last will and testament of Paul R. Gray, who passed away in 1929, the parties concerned entered into an agreement under the so-called Dodge act* to settle the controversy. Petition was filed in the circuit court of Wayne county requesting the approval of said agreement and a direction to the trustees under the will to execute it. An order was entered in accordance with the petition, whereupon the trustees appealed to this Court. The decision reached is reported as *Merkel* v. *Long,* 368 Mich 1, the facts involved in the situation being stated at some length in the opinion rendered. No repetition of what was there said is required. A decree was entered approving the order of the circuit court, subject to the addition of a provision therein declaring that defendant trustees should incur no personal liability by virtue of their executing the agreement which they were required to sign.

---

* PA 1921, No 249, as re-enacted in the present probate code, PA 1939, No 288 (CL 1948, § 702.45 *et seq.* [Stat Ann 1962 Rev § 27-.3178(115) *et seq.*]).

The order of the circuit court involved in the above decision provided for the reservation of the question of attorney fees, the manner of payment thereof, and the source of such payment. It does not appear that any question with reference to such reservation was presented to this Court on the prior appeal, and it was included in the order as finally entered in circuit court.

The present proceeding involves petitions for fees to be paid from the estate trust funds, the testamentary provisions relating to which presented the questions settled by the parties concerned in their agreement under the Dodge act, petitioners being counsel representing certain of the beneficiaries under the will who were directly concerned in its proper interpretation, and guardians *ad litem* appointed by the court to represent unknown heirs, minors, and an incompetent beneficiary. The trustees opposed the granting of said petitions, filing motions to dismiss and also motions for summary judgments. It was and is the position of the defendants that the circuit court was without jurisdiction, that petitioners, not being parties to the suit, were not entitled to the relief sought, and that as a legal proposition the payments requested could not properly be made from the estate funds. The trial judge hearing the motions considered the various grounds submitted in support thereof, concluded that they did not require the granting of the motions, and entered an order accordingly. From such order defendant trustees have appealed. The trial judge did not pass on the separate petitions filed with reference to the allowances, if any, that should be made thereunder, indicating in his opinion that such phase of the controversy would be subsequently considered on proofs to be offered by the parties.

The primary question involved on this appeal obviously relates to the jurisdiction of the circuit court

to hear and determine the petitions filed by attorneys and by guardians *ad litem* and to direct the payment of the amount allowed under each petition from the trust funds of the estate. All of said petitions were based on the theory that the services rendered and moneys expended by petitioners in reaching the settlement approved by beneficiaries under the will of Mr. Gray operated to the benefit of all parties found to have an interest in the trusts created by the will, that the questions involved in the controversy leading up to the agreement under the Dodge act required settlement either by the procedure followed or by litigation, and that it was to the advantage of all concerned to reach an accord among themselves as to the actual intention of the testator, such agreement to be executed by all parties, including the trustees, with requisite approval by a court of competent jurisdiction. Such was the course followed, and it is now insisted that all of the beneficiaries may properly be held liable to share in the necessary expense of the proceeding undertaken and carried through to a successful completion, and that, in consequence, payment from the trust funds prior to the distribution thereof should be required. It is insisted also that the court, the jurisdiction of which was invoked to approve the agreement reached by the parties, was invested with requisite jurisdiction to determine the issue and to pass on the claims of those asserting an equitable right to receive compensation for services rendered and reimbursement for expenses incurred in accomplishing a result in which the beneficiaries had a common interest. Defendants assert in substance that there is no provision of statute authorizing the payments here sought from funds of the estate, and that the trial court should have dismissed the petitions. It is the theory of the appellees that the jurisdiction of the court of equity having been invoked in the first instance it has inher-

ent authority to hear and determine the petitions in question.

The proposition is generally recognized that under appropriate circumstances parties realizing a common benefit out of proceedings taken to establish their rights may be required by equity to contribute to the payment of compensation for services so rendered and for expenses incurred. The decision of the United States supreme court in *Trustees* v. *Greenough,* 105 US 527 (26 L ed 1157), has frequently been referred to by courts throughout the country as recognizing the equitable principle involved. In that case a holder of bonds issued by the Florida Railroad Company brought suit on behalf of himself and others similarly situated against the trustees of the Internal Improvement Fund of Florida, and other parties, to have certain conveyances, which were alleged to involve assets of a fund pledged for the payment of interest on said obligations and instalments of principal falling due, set aside. The litigation was carried through to a successful conclusion, resulting in benefits to the bondholders as a class. The individual who assumed the burden of the litigation filed a petition requesting an allowance to him for expenses and services out of the fund. It was contended in answer to the petition that the moving party was only a creditor and not a trustee and, hence, entitled only to taxed costs. Commenting on such claim, it was said (pp 532, 533, 537):

"In ordinary cases the position of the appellants may be correct. But in a case like the present, where the bill was filed not only in behalf of the complainant himself, but in behalf of the other bondholders having an equal interest in the fund; and where the bill sought to rescue that fund from waste and destruction arising from the neglect and misconduct of the trustees, and to bring it into court for administration according to the purposes of the trust;

and where all this has been done; and done at great expense and trouble on the part of the complainant; and the other bondholders have come in and participated in the benefits resulting from his proceedings, —if the complainant is not a trustee, he has at least acted the part of a trustee in relation to the common interest. He may be said to have saved the fund for the *cestuis que trustent,* and to have secured its proper application to their use. There is no doubt, from the evidence, that, besides the bestowment of his time for years almost exclusively to the pursuit of this object, he has expended a large amount of money for which no allowance has been made, nor can properly be made. It would be very hard on him to turn him away without any allowance except the paltry sum which could be taxed under the fee-bill. It would not only be unjust to him, but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage. He has worked for them as well as for himself; and if he cannot be reimbursed out of the fund itself, they ought to contribute their due proportion of the expenses which he has fairly incurred. To make them a charge upon the fund is the most equitable way of securing such contribution. And such charge cannot be justly complained of by the trustees of the internal improvement fund, because, however fair may have been the conduct of the present trustees, who were elected to their positions since the acts complained of were committed by their predecessors, those acts, as the event of the cause shows, furnished abundant ground for instituting the proceedings.

"It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where 1 of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his

efforts. This has long been the rule in relation to proceedings for restoring property to the uses of a charity, which has been unjustly diverted therefrom. (Citing cases.)   *   *   *

"It is unnecessary, however, to pursue the subject further. The conclusion to which we have come is that, under the circumstances of this case, the circuit court had the power, in its discretion, to allow to the complainant, Vose, his reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit, and in reclaiming and rescuing the trust fund and causing it to be subjected to the purposes of the trust. The allowances made for these purposes we have examined, and do not find anything therein seriously objectionable. The court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have. It is not shown in this case by the appellants that any of these allowances are excessive, or that the expenditures allowed were not fairly and honestly made."

The above decision was quoted with approval in *Sprague* v. *Ticonic National Bank,* 307 US 161 (59 S Ct 777, 83 L ed 1184). There a party asserting a lien on a fund in a closed bank instituted litigation to establish her claim of lien, and prevailed. Asserting that what she had done at her sole expense established as a matter of law a like right of recovery with reference to 14 others in situations analogous to that of plaintiff, she sought payment from the common trust fund. Pointing out that petitioner, by establishing her own claim, has established the claims of other parties involving the same bonds, and pointing out that the fact that she had not formally sought to sue for others in like situations with herself, would not affect the power of equity to grant relief of the kind requested, it was said, in part (p 167):

"Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation —the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation."

This Court recognized the doctrine of *Greenough* in *Sant* v. *Perronville Shingle Co.*, 179 Mich 42. In that case a minority stockholder filed suit to force an accounting and to wind up the affairs of the corporation, the directors of which were charged with wrongdoing. In discussing the situation with reference to the claim of a right to compensation out of the fund realized on behalf of the corporation by the litigation in question, it was said (pp 57, 58):

"The litigation instituted by the minority stockholder, and vigorously opposed by the directors in control, has resulted in the recovery of a substantial sum for the benefit of the corporation. The rule as laid down in the case of *Trustees* v. *Greenough*, 105 US 527 (26 L ed 1157), that [syllabus] 'one. jointly interested with others in a common fund, who, in good faith, maintains the necessary litigation to save it from waste and secure its proper application, is entitled in equity to the reimbursement of his costs as between solicitor and client, either out of the fund itself, or by proportionate contributions from those who receive the benefit of the litigation,' has been cited with approval in numerous decisions of the Federal courts. See *Central Railroad & Banking Co. of Georgia* v. *Pettus*, 113 US 116 (5 S Ct 387, 28 L ed 915). This rule, that the costs as between solicitor and client will be paid out of a fund under the control of a court of equity to persons who have been suc-

cessful in a suit concerning it, resulting in benefit to all interested in the fund, has been applied by the Federal courts to suits brought by stockholders for the benefit of the corporation. The allowance may be made either to the complainant or to the solicitors themselves, without application by their immediate client. (Citing cases.)"

In *Becht* v. *Miller*, 279 Mich 629, an attorney representing a residuary legatee succeeded in bringing about a settlement agreement of litigation by which the sum of $30,000 was recovered for the estate of a decedent. Compensation for services rendered by said attorney was sought by petition, on the theory that those interested in the funds of the estate had benefited by the action taken. The claim was opposed on the ground, among others, that there was no contract between the attorney in question and the estate. Recognizing the general proposition that the relation of attorney and client rests on contract, express or implied, it was stated that under the recognized equitable principle that one interested in a particular fund, who employs an attorney by whose service the fund is enhanced, preserved, or protected, is entitled to claim that others interested in the fund, and therefore benefited, should share the expenses of such service, and that the attorney in question was entitled to have allowed the reasonable value of his services. Among other decisions, *Trustees* v. *Greenough, supra,* was cited, and the Court quoted with approval from the language of the New Hampshire supreme court in *Bean* v. *Bean,* 74 NH 404 (68 A 409, 124 Am St Rep 978), as follows:

" 'As executrices, it was the duty of the appellants to protect and conserve the estate committed to their care. But as they were personally interested in the property in question, claiming adversely to the estate to be the absolute owners of it, the interests of the estate in it were in fact protected by the inter-

-vention of 1 or more of the legatees, the appellees. That such intervention was reasonably necessary and prudent, the result of 1 of the suits seems to establish: *Bean* v. *Bean.* 71 NH 538 (53 A 907). The result of that suit added to the estate or trust fund certain property which the executrices claimed to own individually. A finding by the superior court that the appellees are equitably entitled to reasonable compensation on this account out of the trust fund presents no error of law: *Burke* v. *Concord Railroad,* 62 NH 531.' "

In accord with the foregoing decisions is *Penney* v. *Pritchard & McCall,* 255 Ala 13 (49 So 2d 782, 22 ALR2d 1430). There proceedings were instituted for the protection of the estate of an alleged incompetent person, the moving party being a daughter of such incompetent. The guardian resisted the proceeding and attempts were made to vacate the inquisition into the matter of competency. The attorney representing the moving party in the proceedings sought the allowance of an attorney fee from the ward's estate, on the theory that the proceeding was necessarily in the interest of the ward and the protection of his property, and that a trust fund was thereby created and brought into court for administration. Such claim was upheld by the court, specific reference being made to the "doctrine of *Trustees* v. *Greenough," supra.*

*De Korwin* v. *First National Bank of Chicago* (ND Ill), 84 F Supp 918, involved the construction of a will in connection with litigation. The court was asked to allow certain attorney fees out of the trust fund created by the will. In granting the request, it was said (p 938):

"This is a proper case for such allowances. Where there is an honest difference of opinion respecting the correct construction to be placed upon a will, and such a difference has been demonstrated and con-

ceded here, solicitors' fees are allowable to all assist-
ing parties from the general funds of the trust
estate. *In re Estate of Reeve,* 393 Ill 272, 294 (65
NE2d 815). In the *Reeve Case* the Illinois supreme
court said, 393 Ill at pages 293, 294 (65 NE2d at page
824) : 'The general rule is that where the testator
has expressed his intention in his will so ambiguous-
ly as to make it necessary to go into a court of
chancery to obtain a construction of the will in order
to determine which of 2 or more adverse claims is
valid, the cost of the litigation including solicitors'
fees, should be borne by the trust estate.' To the
same effect, see *Murphy* v. *Fox,* 334 Ill App 7, 15
(78 NE2d 337), and cited cases.

"In *State Life Ins. Co.* v. *Board of Education of
Chicago,* 401 Ill 252 (81 NE2d 877), the Court, citing
with approval the case of *Trustees* v. *Greenough,* 105
US 527 (26 L ed 1157), said, 401 Ill at page 258 (81
NE2d at page 880) : 'Where 1 of many parties hav-
ing a common interest in a trust fund, at his own
expense, takes proper proceedings to save it from
destruction and restore it to the purposes of the
trust, he is entitled to reimbursement either out of
the fund itself or by proportional contributions from
those who accept the benefit of his efforts.' "

We think the above decisions indicate the general
principles that must be applied in determining the
questions in the case at bar. In accordance there-
with we find that the trial judge was correct in re-
jecting the claims of the defendants urged in support
of their motions to dismiss and for summary judg-
ments. A contractual relation between the estate
and the petitioners for the allowance of compensa-
tion and expenses was not under the situation here
presented essential to their right to present their
claims for payment from the trust funds created
under the ambiguous will; nor was it essential that
petitioners be parties of record to the original pro-
ceeding instituted for the purpose of obtaining the

approval of the court to the agreement executed by the parties concerned under the provisions of the Dodge act. It may be assumed that the guardians *ad litem* were parties of record, and that the other petitioners appeared as counsel in that proceeding. They are entitled to be reimbursed from the trust funds for the reasonable value of services rendered in connection with the formulating of the agreement and the subsequent proceeding for its approval.

The order of the trial court from which the appeal has been taken is affirmed. In view of the nature of the controversy no costs are allowed.

DETHMERS, KELLY, and O'HARA, JJ., concurred with CARR, C. J.

SOURIS, J. (*for reversal in part and affirmance in part*). This appeal, by our granted leave, arises out of Dodge act* proceedings which were the subject of a prior appeal. See *Merkel* v. *Long,* 368 Mich 1. By such proceedings the life beneficiaries of 3 testamentary trusts and certain contingent remainder beneficiaries of each trust joined as plaintiffs for judicial sanction of an agreement they had entered into by which they sought to resolve an alleged ambiguity in the settlor's will relating to the determination of remainder beneficiaries entitled to the corpus of each trust upon termination at the death of the life beneficiary. Four guardians *ad litem* were appointed by the court to represent, as defendants, the contingent remainder beneficiaries who could not join as parties to the agreement because they were incompetent, unknown, or unborn. After due hearing, the chancellor ordered the defendant trustees and the guardians *ad litem* in behalf of their wards

---

* PA 1921, No 249, as re-enacted in the present probate code, PA 1939, No 288 (CL 1948, § 702.45 *et seq.* [Stat Ann 1962 Rev § 27.3178(115) *et seq.*]).

to execute the agreement. Following our modification and affirmance of the chancellor's decree, the lawyers who represented each of the life tenants and the competent members of their respective families who were contingent beneficiaries, in their own behalf filed petitions for allowance of their legal fees and expenses in equal shares from the corpus of each of the 3 trusts. They sought allowances for total fees of $37,500 and expenses of $555. At the same time the 4 guardians *ad litem* filed petitions in their own behalf for allowance of their fees in the total amount of $6,050. A guardian *ad litem* had been appointed to represent the incompetent, unknown and unborn heirs of the life beneficiary of each of the 3 trusts, respectively, and a fourth had been appointed to represent the unknown and unborn heirs of the settlor of the trusts. The trustees appeal, upon our leave, from denial of their motions to dismiss these petitions for fees and expenses and from denial of their motions for summary judgment thereon.

One of the grounds for reversal urged upon us on appeal is that the plaintiffs' lawyers had no standing in this action to file their petitions for fees and expenses absent leave to intervene as parties. While I agree that technically the petitions should have been dismissed because not filed by parties to the litigation, failure to dismiss the lawyers' petitions on that ground would not alone constitute reversible error. For all practical purposes we may treat these petitions as having been filed by the plaintiffs themselves for payment from the trusts of the legal fees and expenses for which they had incurred personal liability. Although there is some language in *Sant* v. *Perronville Shingle Company,* 179 Mich 42, at p 59, which seems to suggest the propriety of what was here done, better practice requires that relief be sought only by formally named parties subject to the court's jurisdiction.

The principal argument for reversal of the chancellor's ruling as it relates to the lawyers' petitions for their fees and expenses, however, is that neither statutory provision nor our judicial precedent authorizes such awards in the circumstances of this case. The fact is that there is neither statutory authority nor case precedent in this State to support the exercise of the power asserted by the chancellor and approved by those of my Brothers who join in Mr. Chief Justice CARR's opinion. Ordinarily, in Michigan, only those costs expressly authorized by statute or court rule are taxable in the circuit court. While CL 1948, § 701.51 (Stat Ann 1962 Rev § 27.3178 [51]), provides for the award of costs in the court's discretion, it has been construed by this Court to mean only taxable costs specified by statute or rule and not such costs as reasonable attorney fees or attorney fees actually incurred. *In re Quinn's Estate,* 179 Mich 61, and *In re Petition of Consumers Power Company,* 335 Mich 360.

There is 1 circumstance, however, in which courts of chancery sometimes have drawn upon their reservoir of inherent powers to award reasonable expenses to a party in litigation. In those rare cases when a fiduciary charged with responsibility for a fund beneficially owned by others abuses his trust, neglects the fund or somehow is incapacitated from acting in its behalf and a beneficiary, or perhaps a creditor, steps forth and institutes derivative litigation *for the benefit of the fund* in the place and stead of the fiduciary, such plaintiff's reasonable expenses sometimes are ordered reimbursed from the fund for the benefit of which he has acted. The theory upon which reasonable expenses of derivative litigation are ordered paid from the fund is that the objectives of litigation are for the primary benefit of the fund itself, as distinguished from its beneficiaries' interests therein, and, therefore, the fund equitably should

bear the costs of such litigation; that had a fiduciary been specially designated to institute such litigation, his reasonable expenses would have been paid from the fund; and that by awarding reimbursement for reasonable expenses incurred in such derivative suits some measure of protection is provided against the defalcations or incompetence of fiduciaries.

Every case relied upon by petitioners and cited by the Chief Justice, except one,* is such a case,— a derivative lawsuit in which plaintiff sued, not for his own primary benefit, but, rather, for the benefit of a corporation, a trust fund, or an estate in which plaintiff was beneficially interested and whose fiduciary, whether a corporate officer or director, a trustee, or an executor or administrator, neglected, refused or was incompetent to sue or had himself wasted or mismanaged the corporate, trust, or estate assets. In the case at bar, on the other hand, plaintiffs did not assert a derivative right in behalf of the 3 trusts; they asserted their own personal statutory right to judicial sanction of an agreement between trust beneficiaries that the trusts be administered in a specified manner, there being an ambiguity with respect thereto in the testamentary instrument creating the trusts. Furthermore, whatever benefit the judicially approved agreement might provide for the plaintiffs, and even for some of the incompetent, unknown or unborn heirs of the plaintiff life beneficiaries and of the settlor whose guardians *ad litem* were all joined as defendants, it did not benefit the trusts as entities distinct from their *cestuis que trustent*. In short, this proceeding is

---

* The exception is *Sprague* v. *Ticonic National Bank* (1939), 307 US 161 (59 S Ct 777, 83 L ed 1184), discussed later in this opinion. Sprague sued in her own behalf to recover her bank deposits from specified bonds held by the defendant bank. The supreme court, however, treated this case "as if" plaintiff had sued in behalf of other depositors beneficially interested in the bonds for the purpose of creating a fund from which their deposits could be repaid.

not appropriate for application to it of the salutary principles by which a plaintiff's expenses of derivative litigation may be ordered by the chancellor paid or reimbursed from the fund for the primary benefit of which suit is brought. Analysis of the cases relied upon by the Chief Justice discloses the controlling differences between derivative litigation such as they involve and this lawsuit.

*Trustees* v. *Greenough* (1881), 105 US 527 (26 L ed 1157), involved a claim for attorney's fees by a bondholder who sued the trustees of a fund established to guarantee payment of the bonds held by plaintiff and others to recover for the fund assets claimed to have been wasted and misappropriated by the trustees and other defendants. The very language from the United States supreme court's opinion relied upon by the Chief Justice militates against his conclusion that the principles applied in that case are applicable in this case of Merkel to entitle petitioning attorneys to recover their legal fees and expenses from the trust funds. The supreme court took care to point out that (p 532):

"The bill sought to rescue that fund from waste and destruction arising from the neglect and misconduct of the trustees, and to bring it into court for administration according to the purposes of the trust * * * ; [plaintiff] has at least acted the part of a trustee in relation to the common interest. He may be said to have saved the fund for the *cestuis que trustent,* and to have secured its proper application to their use."

Before we can apply properly the *Greenough* doctrine to any case, we must be able to say somehow that the plaintiff rescued the trust or saved it from destruction or restored to it property which was rightfully its,—but that cannot be said of these plaintiffs. Moreover, before the *Greenough* doctrine can

be applied properly, it would seem from the language of the supreme court quoted above and in the Chief Justice's opinion, that the plaintiff must have been moved to act by the "neglect and misconduct of the trustees", but no such neglect or misconduct is here claimed. In every case relied upon in the supreme court's opinion in *Greenough,* discussion of which begins at page 533 and extends to page 537, and based upon which the supreme court made the comments quoted in the Chief Justice's opinion, the party seeking attorney fees and expenses augmented, restored or maintained a fund, abandoned or pillaged by the fiduciary whose responsibility it was, from which benefited fund such reimbursement was sought.

While it is not here claimed that the Gray trusts were enhanced in value or otherwise directly benefited by the Dodge act litigation, the petitioning attorneys argue that all of the beneficiaries of the trusts benefited by the Dodge act settlement and, for that reason it is equitable and just to charge their legal fees and expenses to the trusts. Even if all beneficiaries did in fact benefit, and benefited equally, at that, a proposition which seems quite incredible even in its statement, it is quite irrelevant because the doctrine of *Greenough* requires that the trusts themselves, as distinguished from some or even all of their beneficiaries, be benefited.

If any benefit did inure to the trusts as a result of the settlement agreement, it was conjectural and quite different in essential nature from that benefit referred to in *Greenough.* The agreement probably lessened, if it did not entirely eliminate, the possibility that at the time for distribution of the corpus of each trust some of the heirs of the settlor or of any of the 3 life beneficiaries might sue, claiming that they and not some other claimants were entitled to the corpus, or a greater share therein, thereby requiring the trustees to incur legal expenses

in behalf of the trusts. Reduction or elimination of such prospective trust expenses probably is of some benefit to the trusts. However, such conjectural benefit is vastly different in nature from that which was found in *Greenough,* "where the bill sought to rescue that fund from waste and destruction arising from the neglect and misconduct of the trustees." If such tenuous benefit as is claimed for the trusts in this case is to be regarded as sufficient to justify charging legal fees and expenses to the Gray trusts, then I see no end to the circumstances in which such legal fees and expenses can be charged to trusts and estates whenever they are involved in litigation.

The next case relied upon by the Chief Justice is *Sprague* v. *Ticonic National Bank* (1939), 307 US 161 (59 S Ct 777, 83 L ed 1184). In that case plaintiff was a depositor of the defunct defendant bank whose suit established her right to reimbursement of her deposit from certain bonds held by the defunct bank. Plaintiff's success in that litigation meant that 14 other depositors similarly situated could also assert their claims against the same bonds. It was for this reason the supreme court recognized the plaintiff's right to recover her attorney's fees from the fund represented by the bonds since plaintiff had (p 167) "for all practical purposes created [a fund] for the benefit of others." Other language of the supreme court, at pp 165, 166, not quoted in the Chief Justice's opinion, serves to emphasize that the basis for awarding plaintiff her counsel's fees was the fact that her action created a fund from which not only she, but others as well, would benefit:

"To be sure, the usual case [where costs as between solicitor and client are allowed] is one where through the complainant's efforts a fund is recovered in which others share. Sometimes the complainant

avowedly sues for the common interest while in others his litigation results in a fund for a group though he did not profess to be their representative. The present case presents a variant of the latter situation.  *   *   *  The petitioner by establishing her claim necessarily established the claims of 14 other trusts pertaining to the same bonds."

Our own cases which the Chief Justice cites also emphasize that the sole basis for such allowance of litigation expenses, absent statutory authority, is the direct benefit accruing to the fund involved as distinguished from any benefit which might incidentally flow to those who normally would participate in the fund. In *Sant* v. *Perronville Shingle Company,* 179 Mich 42, referred to above, minority shareholders of a closely held corporation instituted a derivative stockholders' suit charging waste of the corporation's assets and mismanagement of its affairs by the controlling stockholder who was its principal officer and director, and prayed for an accounting of the affairs of the corporation and for its dissolution. The plaintiffs were successful in recovering for the corporation substantial sums from the principal stockholder who had wasted its assets and mismanaged its affairs. As the Chief Justice notes in his opinion, quoting from *Sant* v. *Perronville,* pp 57, 58, plaintiffs' action "resulted in the recovery of a substantial sum for the benefit of the corporation", and consequently, it was quite appropriate in *Sant* for this Court to quote and to apply the language of *Trustees* v. *Greenough* that [syllabus] "one jointly interested with others in a common fund, who, in good faith, maintains the necessary litigation to save it from waste and secure its proper application, is entitled in equity to the reimbursement of his costs." In the case at bar there was no claim that the trustees had wasted assets, nor was any money or anything else of value

recovered for the trusts as a result of this litigation. It is to this factual situation, absent any benefit to the trusts as such, that the rule of *Trustees v. Greenough* is misapplied by petitioners and by the Chief Justice.

Just how crucial is a finding of benefit to the fund, as distinguished from benefit to others, becomes evident from this Court's opinion in the *Sant Case.* There, the principal stockholder, required by the court's decree to pay back to the corporation moneys he had misappropriated, claimed that only the plaintiff minority stockholders of this closely held corporation would actually benefit from the decree and, therefore, that the plaintiffs should pay their own attorney fees and not expect them to be paid from assets of the corporation. This is what this Court said, at pp 58, 59, in answer to such contention, manifesting the controlling importance of distinguishing between benefit to the corporation or the trust fund, on the one hand, and the corporate stockholders or trust beneficiaries, on the other:

"It is urged that no individual interested in the corporation other than the complainants received any benefits from the result of the litigation. The corporation, however, is a legal entity, separate and distinct from its individual stockholders, and, as the trial judge properly said, the question is not, 'What is the advantage or disadvantage resulting to any stockholder or stockholders from the law suit, but to the corporation itself.' The corporate assets belong to the corporation for the purposes of the corporation, and no stockholder has any right thereto until all the just claims against the corporation are paid. It seems just and equitable that the corporation should pay the reasonable expenses incurred in bringing into its treasury funds which would not have been recovered without the efforts and the litigation instituted by complainants."

In *Sant,* this Court's emphasis was on the benefit to the corporation and not to its stockholders individually. The plaintiffs recovered their attorney fees in *Sant* because the corporation as an entity had been benefited by the litigation despite the fact that some of its stockholders suffered financial loss from the court's decree rather than any net benefit therefrom. It is the fact of benefit to the corporation in *Sant,* and to the trusts in his case of *Merkel,* which controls decision whether plaintiffs' litigation expenses are to be reimbursed. Thus, even if all heirs of the settlor and of the life beneficiaries in *Merkel* benefited from the agreement, the chancellor could not justify awarding plaintiffs' counsel's fees on the basis of *Trustees* v. *Greenough,* or any of the other cases which rely upon it, simply because the Gray trusts did not benefit as entities separate and distinct from their beneficiaries as a result of the plaintiffs' actions.

The Chief Justice also relies upon *Becht* v. *Miller,* 279 Mich 629, in support of his conclusion that the chancellor is empowered to order payment of plaintiffs' attorney fees and expenses from the trusts' corpus. However, what was said in *Becht,* and what distinguishes *Becht* from the case at bar, is that such litigation expenses can be paid from a fund which is "enhanced, preserved or protected" as a result of the legal services for which compensation is sought, p 637. *Becht* v. *Miller* involved the claim of an attorney, engaged by a legatee of an estate, to recover from the estate for his services in forcing a fiduciary of the estate to account to it for funds the fiduciary had improperly withheld from the estate. Emphasizing the necessity for finding benefit to the estate, rather than to its legatees and devisees, from services of the attorney, this Court said, at p 638:

"Thus the case at bar presents the question of the allowance from an estate as administrative expenses of fees and expenses incurred not by the executor or administrator but by a residuary legatee. The question in its precise form has never been heretofore presented for consideration in this jurisdiction. Examination of the decisions of other States reveals the existence of conflicting opinion, but as a general proposition it may be stated that before such an item may be charged against the estate it must be shown that the services rendered were beneficial to the estate as a whole rather than to an individual or group of individuals interested therein. Numerous decisions have been collected in 79 ALR 521.

"A doctrine which permits a decedent's estate to be so charged, should, however, in our opinion, be applied with caution and its operation limited to those cases in which the services performed have not only been distinctly beneficial to the estate, but became necessary either by reason of laches, negligence or fraud of the legal representative of the estate. In the case of *In re Simons' Will,* 55 Conn 239 (11 A 36), an administrator withheld funds rightfully belonging to the estate and legal proceedings were necessary to obtain an accounting. In holding that it was proper to charge the estate with the fees of counsel employed by beneficiaries under the will, the court said (pp 243, 244):

" 'Whatever expense was reasonably incurred in recovering a portion of the estate should be allowed; expense incurred in respect to the personal demands of Mrs. Simons and Clara should not be allowed.' "

Thus, *Becht* v. *Miller* can hardly be considered support for the Chief Justice's position, absent any benefit to the Gray trusts such as is required by our opinion in *Becht* v. *Miller* and further absent even a claim that the defendant trustees were guilty of "laches, negligence or fraud", an affirmative finding of which would seem necessary by the language

quoted above from *Becht* v. *Miller* before the trusts can be charged for the cost of plaintiffs' attorneys.

There is more in our opinion in *Becht* v. *Miller* which has significance to the problems presented in *Merkel*. In *Becht* v. *Miller,* this Court said, at pp 639, 640:

"That some of the services rendered by Ross H. Lamb were beneficial to the estate cannot be denied. He secured the restoration to the estate of funds wrongfully withheld therefrom by the executrix. He secured the removal of the executrix when she failed and refused to comply with the order of the probate court requiring her to give bond which would be adequate in relation to the value of the property in her charge. That the executrix also employed counsel individually in an attempt to establish her erroneous claims is no basis for her to complain of the rule invoked. Neither can it be said that the contest was one solely for the purpose of settling individual differences between the residuary legatees."

This suggests to me that Dodge act proceedings for the purpose of settling conflicting claims or resolving ambiguities in testamentary language are not the kind of proceedings in which allowances from the estate for the parties' counsel fees should be made. Nothing in *Becht* v. *Miller,* as I read it, authorizes payment of such attorney fees from the Gray trusts where the sole purpose of this litigation was the settlement of a dispute about construction of the testamentary language creating the trusts.

Chief Justice CARR cites *Penney* v. *Pritchard & McCall* (1950), 255 Ala 13 (49 So 2d 782, 22 ALR2d 1430), as a case applying the doctrine of *Trustees* v. *Greenough.* From what already has been said in this opinion about the current inaptness of the *Greenough* doctrine, it should be evident that for that reason alone I would not consider *Penney* v.

*Pritchard & McCall* authority for our affirmance of the chancellor's actions in this case. The citation of *Penney* v. *Pritchard & McCall* further lacks persuasion because the court in that case planted its decision specifically upon an Alabama statute which authorized the award of counsel fees in such cases as part of the costs of administration of trust estates.

The Chief Justice's final citation of authority, *De Korwin* v. *First National Bank of Chicago* (ND Ill, 1949), 84 F Supp 918,* applies (p 938) an Illinois rule which recognizes the propriety of charging to an estate the parties' costs of litigation, including their attorney fees, where a testator has expressed his will so ambiguously as to make it necessary to litigate conflicting claims of construction of his will. Whatever basis there is for the Illinois rule, it has no counterpart in Michigan and I certainly do not understand the Chief Justice's opinion to mean that henceforth in all will construction cases "where there is an honest difference of opinion respecting the correct construction to be placed upon a will", attorney fees will be allowed to all "assisting parties" from the funds of the estate.

It is quite true that the Federal district court in the *De Korwin Case* applied the "doctrine of *Greenough*" to further buttress its conclusion that plaintiff was entitled to reimbursement for her attorney's fees. But, significantly, the district court also noted a fact which I have tried to demonstrate is not present in *Merkel,* namely, that *De Korwin* protected and preserved the trust estate involved in that case by her action against the bank and others for an accounting. The *De Korwin Case* was not merely a suit for the construction of a will, but in addition plaintiff asserted a derivative right to surcharge

---

* Affirmed in pertinent respects in (CCA 7, 1949), 179 F2d 347.

defendants who were administering the estate (p 938) "with any and all losses, fees or commissions which they may have deducted from the fund or for which they may have taken credit in their accounts." In this aspect of the *De Korwin* litigation the doctrine of *Greenough* seems to have been properly applied by the district court, but this is not to say that absent even a claim of comparable benefit to the Gray trusts, that that doctrine is likewise applicable here.

The sweeping language contained in the Chief Justice's opinion in this case makes an abrupt break with our past legal history in this State without warning and without the qualifications usually found in judicial pronouncements of such magnitude. Its impact, if adopted by a majority of this Court, will be felt at least by all probate estates the assets of which are sufficiently large to support the payment of counsel fees for litigation which presently is financed by the contesting parties. I would imagine the impact upon the State's revenues from its collection of inheritance taxes, to say nothing about the impact upon the Federal government's collection of estate taxes from Michigan estates, will be at least discernible if not significantly damaging and yet neither the State of Michigan nor the Federal government is represented in this litigation. Perhaps even more important is that general application of the *Greenough* doctrine to cases such as this, where there is no monetary benefit to the estate, might result in the depletion of such estate to its creditors' ultimate loss to the extent of the attorney fees payable from the estate for the sole benefit of the disputing beneficiaries.

With due deference to the doctrine of *Greenough,* at least as recognized in this State by our decision in *Becht* v. *Miller,* 279 Mich 629, I do not believe that the facts of this case permit invocation of that

doctrine. Before extending the very limited scope of the doctrine to circumstances such as are presented in this case, I think this Court should give the problems I have suggested above a great deal more thought than has been given to them to date.

As far as the plaintiffs' attorneys' petitions for allowance of their fees and expenses from the corpus of the 3 Gray trusts, share and share alike, are concerned, the chancellor should have granted the trustees' motions to dismiss. The petitions of the 4 guardians *ad litem,* however, present an entirely different problem and with reference to those petitions, I believe the chancellor properly refused their dismissal and that he is empowered to award the guardians *ad litem* fees for their services from the trusts under his control.

Some states consider the fees of a guardian *ad litem* as part of the taxable costs and would, in cases such as this one, tax the fees of a guardian *ad litem* named as a defendant against the plaintiff even when the plaintiff prevailed in his action. See *Hoffman* v. *Morgan* (1952), 206 Okla 567 (245 P2d 67, 30 ALR 2d 1141). See, also, *Runions* v. *Runions* (1948), 186 Tenn 25 (207 SW2d 1016, 1 ALR2d 242). While the Oklahoma court apparently makes no distinction between the fees paid to the guardian *ad litem* for his services as such and fees paid to his attorney, other courts do draw such a distinction. For example, the 8th Circuit Court of Appeals in *Franz* v. *Buder* (1930), 38 F2d 605, at p 608, held that the fees for services as guardian *ad litem* could be taxed as costs while the guardian *ad litem's* attorney fees were to be "made a charge against and payable out of the interest of the minors in the trust estate."

By implication this Court acknowledged the power of a circuit court judge who had appointed a guardian *ad litem* to represent the interests of minors and

other incompetents to provide for his compensation
and his legal expenses from the fund produced by
the litigation. See *Sheahan* v. *Judge of Wayne Cir-
cuit,* 42 Mich 69, at p 70, where this Court said:

"It was also the duty of the court to make proper
inquiry and protect any rights of the guardian *ad
litem* or his solicitor before putting the fund out of
its control."

*Sheahan's* syllabus, pertinent to this point, was
quoted favorably in the controlling opinion of the
Court in *Dudex* v. *Sterling Brick Company,* 237 Mich
470, 477, 478. A like view of judicial power to
compensate guardians *ad litem* from the funds in-
volved in litigation, appears in *Mutual Life Insur-
ance Company* v. *Ginsburg* (WD Pa, 1954), 131 F
Supp 950, where the Federal district court compen-
sated a guardian *ad litem* appointed by it in an
interpleader action over an insurance fund. The
district judge in his opinion, at page 954 said:

"It does not appear that the minors have any
estate which can be reached by this court to pay
for the legal services. However, it appears to be
settled that a court has the power to reasonably
compensate a guardian *ad litem* out of the fund in
control of the court. This power is necessarily
implied from the right and duty of the court to
make such an appointment and the necessity of insur-
ing adequate legal protection for the minors."

On appeal to the 3d circuit court of appeals, 228
F2d 881, at pp 883, 884, the court of appeals said:

"[The guardian *ad litem*] was appointed by the
court in pursuance of the court's duty to protect the
interest of minors who cannot protect themselves.
It is not at all like a case where an adult retains a
lawyer to represent him in a lawsuit. Except in
special instances the lawyer's fees are not taxed as
part of the costs. But here the guardian *ad litem-*

attorney was a court appointed officer to represent the interest of these minors with regard to a particular fund in the control of the court. We think it quite clear that compensation was to be allowed for the reasonable value of the services rendered and allowed from the fund itself."

In the case at bar 3 of the petitioning guardians *ad litem* were appointed to represent the minor children and grandchildren and the unknown and unborn heirs of the 3 life beneficiaries of the Gray trusts. The fourth petitioning guardian *ad litem* was appointed to represent the unknown and unborn heirs of the settlor of the trusts. Each guardian *ad litem* performed services necessarily distinct from those performed by the others and, as a matter of fact, their petitions seek recovery of varying fees. No reason is shown why the fee of each of the 3 guardians *ad litem* representing the children, grandchildren and unknown and unborn heirs of the life beneficiaries should not be charged to the specific trust in which the guardians' wards are primarily interested. As for the fourth guardian *ad litem,* appointed to represent the unknown and unborn heirs of the settlor of the trust (who, conceivably, under 1 construction of the Gray will might be entitled to take part of the corpus of each of the trusts upon termination at the death of the respective life beneficiaries), it would seem quite reasonable to require payment of his fee from each of the 3 trusts in equal shares.

When it comes time for the chancellor to consider the petitions of the guardians *ad litem* for the purpose of determining the amounts to be allowed as their fees and the sources of payment thereof, he should allocate some part of the burden for such fees to the income beneficiaries of each trust (upon whose suit and, in part, for whose benefit, the guard-

ians *ad litem* were appointed) by providing that a part of the fees of the guardians *ad litem* be paid directly from income of the trusts as well as a part thereof be paid from their corpus.

For the foregoing reasons, I would affirm the chancellor's denial of the trustees' motions as they relate to the guardians *ad litem* and reverse his denial of the trustees' motion to dismiss the petitions filed by plaintiffs' attorneys for their fees and expenses. Appellant trustees may tax their costs against the appellee petitioners.

BLACK, KAVANAGH, and SMITH, JJ., concurred with SOURIS, J.