*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN STATE POLICE TROOPERS
ASSOCIATION, INC.,

UNPUBLISHED
July 16, 2020

Plaintiff-Appellant,

v

No. 350863
Court of Claims
LC No. 19-000030-MK

DEPARTMENT OF STATE POLICE,

Defendant-Appellee.

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

GLEICHER J. (*dissenting*).

The Freedom of Information Act (FOIA), MCL 15.231 *et seq*., requires governmental agencies to make records and documents publicly available upon request, unless they fall within a statutory exemption. Pursuant to a FOIA request made by a reporter for the Detroit Free Press, defendant Department of State Police released an internal affairs (IA) investigation report concerning kickback allegations made against several Michigan State Police employees. Plaintiff Michigan State Police Troopers Association, Inc. (MSPTA), the exclusive bargaining representative for the Michigan State Police, lodged a grievance against defendant asserting that the report was exempt from disclosure and that its release violated the parties' collective bargaining agreement.

The grievance proceeded through several steps without resolution. On the eve of arbitration, the parties agreed to hold the grievance process in abeyance so that the MSPTA could file a declaratory judgment action in the Court of Claims seeking guidance regarding the legal issues underlying their labor dispute. The Court of Claims summarily dismissed the action. Regarding two counts of plaintiff's complaint, the Court of Claims found that because the disclosure had already occurred, no actual controversy existed. A third count was dismissed because plaintiff failed to identify a legal basis for withholding disclosure other than the FOIA.

The majority holds that plaintiff's declaratory judgment requests are nonjusticiable, and that plaintiff's failure to plead a reason for withholding the report other than the FOIA doomed its claim. I respectfully dissent.

Plaintiff's complaint sets forth three counts. Count I is grounded in MCL 15.243(1)(d), which permits a public body to withhold "[r]ecords or information specifically described and exempted from disclosure by statute." Plaintiff asserts that the Bullard-Plawecki Employee Right to Know Act (ERKA), MCL 423.509(2), requires that reports generated after IA investigations must be kept in a separate, confidential file.[1] Because these reports were confidential under the ERKA, plaintiff argues, they constituted "records . . . exempted from disclosure by statute," should not have been "released," and that similar reports should be withheld from disclosure in the future.

Court II avers that the IA report qualified as a "personnel record" of a "law enforcement agency" under the FOIA, rendering it exempt from disclosure under MCL 15.243(1)(s)(*ix*). That subsection specifically states that "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure" the "personnel records of law enforcement agencies" may be exempt from disclosure.

Count III asserts that "[u]pon information and belief," the IA report at issue "contained involuntary statements from law enforcement officers." Under the Disclosures by Law Enforcement Officers Act (DLEOA), MCL 15.395 *et seq*., the complaint continues, involuntary statements made by law enforcement officers are confidential and not subject to disclosure absent written consent. These statements "may or may not have [been] redacted" when the reports were shared with the newspaper. No written consent was provided, plaintiff alleges, rendering the statements exempt from disclosure under MCL 15.243(1)(d).

As to each count, plaintiff sought a declaratory judgement. Alternatively, plaintiff asked the court to "enjoin" similar future disclosures. Regarding declaratory relief, in Count I plaintiff requested that the court: "Declare that reports created by Defendant following internal affairs investigations are exempt from disclosure under the FOIA; MCL15.243(1)(d), and ERKA; MCL 423.509(2)." Count II entreated that the court:

> A. Declare that reports created by Defendant following internal affairs investigations are presumptively exempt from disclosure under the Michigan

---

[1] At the time of these events, the statute provided:

> If the employer is a criminal justice agency which is involved in the investigation of an alleged criminal activity or the violation of an agency rule by the employee, the employer shall maintain a separate confidential file of information relating to the investigation. Upon completion of the investigation, if disciplinary action is not taken, the employee shall be notified that an investigation was conducted. If the investigation reveals that the allegations are unfounded, unsubstantiated, or disciplinary action is not taken, the separate file shall contain a notation of the final disposition of the investigation and information in the file shall not be used in any future consideration for promotion, transfer, additional compensation, or disciplinary action. [MCL 423.509(2), as amended by 2018 PA 521.]

Freedom of Information Act, pursuant to MCL 15.243(1)(s)(ix), unless the public interest in disclosure outweighs the public interest in nondisclosure.

B. Declare the public interest in disclosure of the unfounded internal investigation reports of Defendant is outweighed by the public interest in nondisclosure of those unfounded internal investigation reports.

And Count III asked the court to: 'Declare that involuntary statements by law enforcement officers which are confidential under the DLEOA are also exempt from disclosure under Section 13(1)(d) of FOIA; MCL 15.243(1)(d).'

The Court of Claims ruled that as to counts I and III, "no live controversy" existed, precluding declaratory relief. The matter was "not ripe for review," the court explained, because the IA report had already been released and no "future" such event appeared on the horizon. Count II failed, the court continued, because plaintiff identified no basis to prohibit disclosure independent of the FOIA. In light of the Supreme Court's opinion in *Tobin v Mich Civil Serv Comm*, 416 Mich 661, 667, 670; 331 NW2d 184 (1982), the Court of Claims elucidated, plaintiff's "reverse FOIA" claim brought solely on the basis of MCL 15.243(1)(s)(*ix*) was untenable.

II

The majority affirms the Court of Claim's justiciability ruling by holding that justiciability principles, such as ripeness and mootness, preclude declaratory relief. Respectfully, the majority has misconstrued the underlying facts and the governing law.

In one sense, it is true that no "live controversy" currently swirls around the release of the IA report. The report has been handed over to the Detroit Free Press—the genie is out of the bottle. A labor dispute flowed from that hand-over, however, and the labor dispute lives on. Plaintiff grieved defendant's actions, claiming that the release of the report contravened the CBA. An affidavit signed by a representative of plaintiff's bargaining unit attested that during the grievance proceedings,

the parties agreed that further processing of the Grievance to arbitration under the collective bargaining agreement would not provide the answers and relief to the legal issues arising from the Grievance. It was agreed by the parties to hold the Grievance in abeyance while the MSPTA pursued action in court to address the legal issues that were not within an arbitrator's jurisdiction under the collective bargaining agreement.[2]

---

[2] Defendant concurs with this version of the underlying events. And contrary to the majority, the CBA did not vest the arbitrator with authority to construe and apply the ERKA or the FOIA. Rather, the CBA states: "The arbitrator shall have no authority except to pass upon alleged violations of the expressed written provisions of this Agreement, the unreasonableness or misapplication of a rule and regulation, or that a work order was unreasonable and arbitrary, or

The grievance now awaits an arbitral determination of whether defendant violated the CBA by releasing the report, and whether future releases containing "details of internal investigation allegations made against MSPTA members" should be foreclosed or otherwise limited.

Accordingly, the ongoing grievance process presents a live controversy. Despite that the IA report has been released, the parties dispute whether doing so violated the CBA, and seek a ruling that will guide defendant's response when confronted in the future with FOIA request for IA investigation information.

MCR 2.605(A)(1) provides: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." Our Supreme Court has explained that "[t]he declaratory judgment rule was intended and has been liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people." *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978). Contrary to the majority's view, the Supreme Court has consistently recognized that the declaratory judgment avenue is available to guide and inform litigants before a legal insult occurs. "One great purpose is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds . . . ." *Merkel v Long*, 368 Mich 1, 13; 117 NW2d 130 (1962) (quotation marks and citation omitted). " 'Courts continually declare rights which have not become fixed under an existing state of facts, but are prospective only; they may not, however, be so remote and speculative as to be hypothetical and abstract.' " *Id.*, quoting Borchard, Declaratory Judgments (2d ed), pp 422-424.

This Court, too, has recognized that because declaratory relief is available "to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred." *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012). All that is required is a presentation of facts demonstrating "an adverse interest necessitating the sharpening of the issues raised." *Id*. (quotation marks and citations omitted). Plaintiff's grievance presents facts giving rise to a legal question fulfilling this requirement.[3]

*UAW* instructs that plaintiff's complaint presents an actual controversy regarding defendant's past conduct in releasing the IA report, and how future requests for IA reports should

---

involves discrimination in application of a claim of suspension, discharge or demotion without just cause."

[3] Contrary to the majority's view that plaintiffs seek only an "advisory opinion," the ongoing labor dispute demonstrates that a present legal controversy exists regarding the application of the FOIA to the parties' CBA. The parties' interests are clearly adverse. "[W]hat is essential to an 'actual controversy' under the Declaratory Judgment rule is that plaintiffs plead and prove facts which indicate an adverse interest necessitating the sharpening of the issues raised." *Shavers*, 402 Mich at 589.

be handled. The majority's approach is inconsistent with the principles underlying the declaratory judgment rule, which are:

> to enable the parties to obtain adjudication of rights *before* an actual injury occurs, to settle a matter *before* it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants. [*Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006) (emphasis added).]

Plaintiff contends that defendant failed to properly interpret and apply two of the exemptions in the FOIA which afforded defendant with the *discretion* to withhold the IA report. Given that discretion, plaintiff argues, defendant violated the terms of the CBA by disclosing the report. Under MCR 2.605(A)(1), the litigants are entitled to a determination of the scope and application of the cited exemptions to enable the arbitrator to determine their impact on the CBA.

III

The majority also errs by holding that on the merits, plaintiff failed to state a claim for declaratory relief arising under the FOIA. Plaintiff's requests for declaratory judgment seek rulings that the IA reports were either precluded by the CBA, or "presumptively" exempt from disclosure under various FOIA subsections. The majority reads the word "presumptively" out of the equation, ignores the role of the ongoing grievance process, and summarily rejects plaintiff's FOIA claims. The majority has misunderstood the nature of the relief requested and has also misconstrued the governing law.

A

Count I of plaintiff's complaint invokes MCL 15.243(1)(d), which permits a public body to withhold "records or information specifically described and exempted from disclosure by statute." Plaintiff cites § 9(2) of the ERKA as the statutory basis for nondisclosure. This subsection requires "criminal justice agencies" to "maintain a separate confidential file of information relating to an investigation." MCL 423.509(2). Plaintiff asserts that this "confidential file" is not subject to disclosure to an employee, and therefore should be considered off-limits when requested under the FOIA.

The Court of Claims refused to address the merits of plaintiff's ERKA claim based on its determination that it was nonjusticiable. The majority affirms that ruling, characterizing as purely "advisory" plaintiff's request for declaratory judgment of its ERKA claim. "Plaintiff's claims were premised on an anticipated, future legal controversy," the majority asserts, "therefore, plaintiff was requesting an advisory opinion—in other words, advice—on the matter because no actual pending FOIA request was being contested."

"Generally, an actual controversy exists where a declaratory judgment is necessary *to guide a plaintiff's future conduct* in order to preserve the plaintiff's legal rights." *Citizens for Common Sense in Gov't v Attorney Gen*, 243 Mich App 43, 55; 620 NW2d 546 (2000) (emphasis added). The majority mistakenly believes that because defendant has not yet been confronted with another FOIA request seeking information potentially exempt from disclosure under the ERKA, plaintiff has no ability to seek a declaration that would guide the parties' conduct. The parties agree—and

-5-

it makes perfect sense—that a future FOIA request concerning an internal investigation is overwhelmingly likely. There are bound to be internal investigations in the future, and there are bound to be FOIA requests for the details. "[C]ourts are not precluded from reaching issues before actual injuries or losses have occurred." *UAW*, 295 Mich App at 495. This means that adverse parties, such as the litigants before us, are entitled to seek judicial guidance regarding a controversy that is highly likely to reemerge. Without this guidance, plaintiffs allege, defendants are likely to again disclose protected material. Such guidance is the marrow of the declaratory judgment remedy.

It bears mention that plaintiff's ERKA claim finds strong support in *Newark Morning Ledger Co v Saginaw Co Sheriff*, 204 Mich App 215; 514 NW2d 213 (1994). In *Newark Morning Ledger*, the plaintiff sought access under the FOIA to many years of the defendant's IA records. *Id*. at 216. Defendant resisted disclosure, and the plaintiff filed suit. The trial court granted the defendant's motion for summary disposition, based on MCL 15.243(1)(t)(*ix*), which allows a public body to withhold "personnel records of law enforcement agencies," unless "the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance[.]"[4] *Newark Morning Ledger*, 204 Mich App at 217.

This Court rejected the defendant's argument that it could avoid disclosure of an IA report under MCL 15.243(1)(t)(*ix*) simply by placing it in an employee's personnel file. *Id*. at 220 ("An interpretation of the exemption that would allow a law enforcement agency to shield any record from disclosure by merely placing it in a folder labeled 'personnel file' would undercut the policy of full and complete disclosure mandated by the FOIA. Therefore, we conclude that the Legislature did not intend that personnel records be solely defined by their location."). But the Court embraced the defendant's argument under the ERKA that because an "unfounded, unsubstantiated" IA report must be kept in a separate file inaccessible to the employee, the report is also inaccessible to third parties under the FOIA. *Id*. at 221-222. Precisely the same argument is made here.

In *Newark*, we found the plaintiff's ERKA argument potentially meritorious, explaining:

Thus, the Legislature, in an act designed to extend an employee's ability to gain access to the employer's files beyond the rights afforded to the public by the FOIA, determined that the employee should not be allowed access to the records of the employer's internal investigations. *The Legislature's clearly expressed intent in the ERKA to prohibit access by an employee to any internal investigations relating to that employee demonstrates that the Legislature intended that access to those records be severely restricted.* We can reasonably infer that in drafting the FOIA, the Legislature had the same intent relative to records of closed internal affairs investigations such as those requested by plaintiff. The Legislature would not have denied an employee access to documents that were readily available to the public pursuant to the FOIA. Therefore, we conclude that the Legislature intended that the internal affairs investigatory records requested by plaintiff fall within the

---

[4] This subsection was relettered as subsection (s) by 2000 PA 88.

meaning of the term "personnel record of law enforcement agencies" as used in the FOIA. [*Id.* at 223 (emphasis added, citation omitted).]

Notably, this Court did not decide whether the requested reports were subject to disclosure. Rather, we remanded "to the trial court for additional findings" regarding the balancing of the public and private interests at stake, and "for a determination whether the public interest in disclosure outweighs the public interest in nondisclosure of some, all, or none of the documents in their original or redacted versions." *Id.* at 227.

Absent a declaratory judgment, plaintiff will never be able to litigate the merits of its ERKA claim before disclosure, or to prevent defendant from releasing material potentially exempted from disclosure. In my view, the declaratory judgment remedy is custom made for situations such as this.

B

Count II of plaintiff's complaint seeks a declaration that defendant may withhold production of IA reports under MCL 15.243(1)(s)(*ix*) because they qualify as "personnel records" under the FOIA. MCL 15.243(1)(s)(*ix*) specifically applies to the "public records of a law enforcement agency," and states that "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure," the "personnel records of law enforcement agencies" may be exempt from disclosure.

The majority affirms the trial court's ruling that plaintiff's "reverse FOIA" claim is precluded because plaintiff failed to identify a ground for prohibiting disclosure outside the FOIA itself. Both the Court of Claims and the majority cite *Tobin*, 416 Mich 661, as the controlling authority on this score.

Although it did not expressly overrule *Tobin*, our Supreme Court's opinion in *Kent Co Deputy Sheriff's Ass'n v Kent Co Sheriff*, 463 Mich 353; 616 NW2d 677 (2000), calls into question the majority's overbroad application of *Tobin*'s limitation on reverse-FOIA claims. In *Kent Co*, 463 Mich at 367, the Supreme Court affirmed this Court's holding that the defendants "had the right to exempt from disclosure the disputed records, under MCL 15.243(1)(t)(ix)[;]" no additional statutory support was required. Moreover, even if *Tobin* remains good law, the majority misreads it. As the Supreme Court more recently explained in *Mich Federation of Teachers & Sch Related Personnel, AFT, AFL-CIO v Univ of Mich*, 481 Mich 657, 668; 753 NW2d 28 (2008), *Tobin* actually held that the FOIA " 'authorizes, but does not require, nondisclosure of public records falling within a FOIA exemption.' "

Plaintiffs in this case seek nothing more than a ruling that echoes this statement from *Mich Federation of Teachers*. Their complaint asks for a declaration that MCL 15.243(1)(s)(*ix*), previously (t)(*ix*), affords defendant with the discretion to withhold IA reports. Because *Tobin* does not bar such a determination, I would remand to the trial court for further consideration of this argument.

C

The third and final count of plaintiff's complaint alleges that "involuntary statements" that are confidential under the DLEOA are exempt from disclosure under MCL 15.243(1)(d). Under the DLEOA, a law officer's "involuntary statement" is not subject to "public inspection." MCL 15.395. Plaintiff alleges that MSPTA members were ordered to appear as witnesses in the underlying investigations, were not informed that their appearance and participation were voluntary, and were required to answer "unless 5th Amendment rights against criminal self-incrimination [were] asserted." In my view, plaintiff is entitled to a declaration as to whether such compelled statements fall within the realm of information that may be withheld under the FOIA.

In summary, I submit that this case was dismissed on an inappropriate ground by the Court of Claims, and that the majority's attempt to affirm that decision misapprehends the law and ignores the underlying facts. I would reverse the Court of Claims and remand for further proceedings.


/s/ Elizabeth L. Gleicher